417 So.2d 1119 (1982)
Major RUSSELL, As Personal Representative of the Estate of Mary Jean Bradham, Deceased, and On Behalf of Norman Bradham, Jeffery Bradham and Greg Bradham, Minor Children of Mary Jean Bradham, Deceased, Appellants,
v.
The STATE of Florida and Gordon Oldham, Jr., As State Attorney for the Fifth Judicial Circuit of the State of Florida, an Agency of the State of Florida, Appellees.
No. 81-531.
District Court of Appeal of Florida, Fifth District.
August 11, 1982.
*1120 Kenneth R. Cate and Herbert H. Hall, Jr., of Maher, Overchuck, Langa & Cate, Orlando, and Sammy Cacciatore of Nance, Cacciatore & Sisserson, Melbourne, for appellants.
David R. Best of Maguire, Voorhis & Wells, P.A., Orlando, for appellees.
ORFINGER, Chief Judge.
This appeal is from an order assessing attorney's fees against appellant, plaintiff below, under section 57.105, Florida Statutes (1979). We reverse.
The underlying litigation out of which the assessment arose was an action for damages against the State of Florida and the State Attorney for the Fifth Judicial Circuit in which it was alleged, in substance, that the State was negligent in not using due care to secure the "preventive detention" of decedent's estranged husband when he was taken into custody for assaulting decedent, when the State knew that he had beaten her on previous occasions and had threatened to kill her. The complaint further alleged that decedent's husband was released from custody on his own recognizance because no representative of the State Attorney's office was present at the preliminary hearing to advise the court of his past history of violence and to request "preventive detention" to avoid further violence to decedent's person. It was alleged that the negligence of the State Attorney in failing to take steps to prevent Ernest's release was a proximate cause of Mary's death at Ernest's hands a few days thereafter, and that under section 768.28, Florida Statutes (1979), (waiver of sovereign immunity), the State should respond in damages.
A final summary judgment was entered for defendants and against the plaintiff, and on appeal to this court, the judgment was affirmed. Russell v. State, 392 So.2d 91 (Fla. 5th DCA 1980). Following the issuance of our mandate, on motion by the State, the order appealed from was entered, awarding attorney's fees to appellees in the amount of $5,000.
To justify an award under section 57.105, the trial court must find that the action is frivolous; i.e., that the action is so devoid of merit both on the facts and the law as to be completely untenable. Whitten v. Progressive Casualty Insurance Company, 410 So.2d 501 (Fla. 1982); Allen v. Estate of Dutton, 384 So.2d 171 (Fla. 5th DCA 1980). A frivolous action is not merely one that is likely to be unsuccessful. Instead, like a frivolous appeal,

*1121 [i]t is one that is so readily recognizable as devoid of merit on the face of the record that there is little, if any, prospect that it can succeed. It must be one so clearly untenable, or the insufficiency of which is so manifest on a bare inspection of the record ... that its character may be determined without argument or research.
410 So.2d at 505, 384 So.2d at 175.
The purpose of section 57.105 is to discourage baseless claims, stonewall defenses and sham appeals in civil litigation by placing a price tag through attorney's fees awards on losing parties who engage in these activities. Whitten, at 505. On the other hand, the statute should not be so construed that it will have a chilling effect on parties who, for example, may unsuccessfully attempt to raise questions of first impression, nor should it be construed in a manner that will deter the future growth of the law by exacting a price for today's unavailing efforts to change it.[1]Parkway General Hospital v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981).
Here, appellants attempted to convince the court in the main action that the State should respond in damages under the facts in this case because sovereign immunity (and consequently prosecutorial immunity) had been waived by section 768.28, but they were unsuccessful. So far as we can determine, this was the first attempt to assert liability against the State because of the alleged negligence of a prosecuting attorney since sovereign immunity was waived by section 768.28. The action cannot be classified as frivolous merely because it was unsuccessful. It was a good faith effort to seek an interpretation of a new statute, and was at least arguable, so appellants should not be penalized for their unsuccessful efforts to expand the scope of the law by judicial interpretation.
The judgment appealed from is REVERSED.
SHARP and COWART, JJ., concur.
NOTES
[1] That the law of this state changes to meet new conditions cannot be seriously questioned. Both statutory law and judicial interpretation respond to changing times. The late Justice Glenn Terrell said it well, when speaking for the court in Chamberlain v. Chamberlain, 115 Fla. 21, 155 So. 136 (1934). He said:

.....
The distinguishing characteristic of the common law is that it expands or contracts to meet the changing conditions of the social and economic order of which it forms a rule of conduct. The law is dynamic; it must approach certainty, but it can never stand still. It is of all things an instrument of expanding life, and its principles must be so applied as to bring within its compass new situations that constantly develop in the progress of changing times and conditions. The common law of England and the common law of Florida were developed that way. Rules of law, unlike rules of mathematics, are replete with exceptions and are eternally the subject of change and modification, and whether or not they change depends on the facts precipitating the cases they govern. 155 So. at 137.
.....
Striking examples of changes by judicial interpretation are found in cases such as Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), where comparative negligence replaced the longstanding defense of contributory negligence, and in Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), where the court, for the first time, imposed liability on cities for torts of police officers, recognizing the need to change the law to meet changing times, because "the law is not static [and] the great body of our laws is the product of progressive thinking which attunes traditional concepts to the needs and demands of changing times." Id. at 133.