Kenneth R. **CATE**, Esquire, and Maher, Overchuck, Langa & Cate, a Florida Association, Plaintiffs-Appellants,

v.

Gordon G. **OLDHAM**, Jr., and State of Florida, Defendants-Appellees.

No. 82–5392.

United States Court of Appeals, Eleventh Circuit.

June 2, 1983.

W.L. Kirk, Jr., Rumberger, Kirk, Caldwell & Cabaniss, Dennis J. Wall, Orlando, Fla., for plaintiffs-appellants.

David R. Best, Asst. Atty. Gen., Kimberly A. Ashby, James E. Slater, Carl D. Motes, Orlando, Fla., for defendants-appellees.

Before KRAVITCH, HENDERSON and ANDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Petitioners-appellants, Kenneth Cate, individually, and the law firm Maher, Overchuck, Langa and Cate, P.A. (collectively referred to as "Cate"), brought this action under 42 U.S.C. § 1983 asking the federal court to enjoin an ongoing civil action for malicious prosecution in the state courts of Florida and seeking declaratory relief that the maintenance of the state action violates their constitutional rights. The State of Florida and Florida State Attorney Gordon G. Oldham, Jr. are plaintiffs in the state malicious prosecution against Cate and are the defendants-appellees in this federal proceeding. The district court dismissed the § 1983 action as to the State of Florida and denied injunctive relief against Oldham. Cate appeals the denial of injunctive relief as to both defendants.

*Factual Background*

Mary Jean Bradham was beaten to death by her estranged husband Ernest Bradham. On various occasions prior to her death she had reported to the police having been beaten by Bradham and he had been arrested for battery. The administrator of the de-

ceased's estate instituted a wrongful death action alleging that the State of Florida and State Attorney Oldham negligently failed successfully to prosecute Ernest Bradham for the reported batteries and that such negligence was the direct and proximate cause of the death. Petitioner-appellant Cate represented the estate in that action. The state court awarded summary judgment on behalf of the State and Oldham. That judgment was affirmed on appeal; however, the award of attorney's fees to the defendants was reversed on the ground that the action was not frivolous. *Russell v. State of Florida,* 417 So.2d 1119 (Fla. 5th DCA 1982).

Subsequently, the State of Florida and Oldham, individually and in his capacity as State Attorney, filed common law actions for malicious prosecution in the state courts naming petitioners-appellants as defendants. Appellant filed a motion to dismiss alleging the State, and state officials who have been sued in their official capacities, may not, consistently with the First Amendment, be plaintiffs in malicious prosecution actions against persons who have exercised their First Amendment right to petition the government by bringing legal actions against the State and state officials. Alternatively, he argued that there was no state statutory authority for the State and the State Attorney to be plaintiffs in malicious prosecution actions. The motion to dismiss was denied and the state court of appeals denied petition for writ of certiorari for interlocutory review and suggestion for certification to the Supreme Court of Florida.

This action pursuant to § 1983 was filed in federal district court simultaneously with the petition for writ of certiorari to the state appellate court. The district court dismissed the action against the State of Florida, concluding that the State cannot be a "person" under § 1983 and therefore was not properly named a defendant. After ruling that abstention under the doctrine of

*Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) was inappropriate on the facts of this case, the court below denied injunctive relief against continued prosecution of the malicious prosecution action by Oldham, finding that Cate had shown neither a substantial likelihood of success on the merits nor the presence of irreparable injury.

We affirm the dismissal of the § 1983 action against the State of Florida, but for a reason different than that relied upon by the district court. We grant preliminary injunctive relief against Oldham's continuance of the malicious prosecution action pending a response to the questions of state law we today certify to the Supreme Court of Florida and our decision in light of the answers to be received.

## I. The State of Florida as Defendant

### The Eleventh Amendment

■ Absent waiver of such immunity, the Eleventh Amendment to the United States Constitution prohibits suits in federal court against a state by citizens of another state.[1] It has long been interpreted also to preclude suits against a state by citizens of that state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1350–51, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 342 (1890).

■ The Eleventh Amendment does not bar all claims against officers of the state, however; it does not prohibit an action against a state official who has acted outside the scope of his statutory authority or, even if within his authority, pursuant to authority that is unconstitutional. *Florida Dept. of State v. Treasure Salvors, Inc.,* —— U.S. ——, ——, 102 S.Ct. 3304, 3316, 73 L.Ed.2d 1057, 1071 (1982). Interpretation of the Eleventh Amendment has led to maintenance of the "legal fiction" that suits against state officers, even when the suit is directed to the officers' actions in their official capacities and actions approved by

---

1. The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens

of another state, or by citizens or subjects of any foreign state.

U.S. Constitution, Amendment XI.

the upper eschelons of state executive decisionmakers, are not against the state and, therefore, are not barred by the Eleventh Amendment.[2] *Id.* at ——, 102 S.Ct. at 3314, 73 L.Ed.2d at 1068; *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Because "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar," *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974), the initial determination of whether a suit is one against a state official or the state itself is crucial.

■ In attempting to decide whether suits nominally against state officials are in truth suits against the state and therefore outside the jurisdiction of the federal courts, the Supreme Court has distinguished between cases in which monetary damages as opposed to prospective, injunctive relief is sought. *Quern v. Jordan,* 440 U.S. 332, 346–48, 99 S.Ct. 1139, 1147–49, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. at

663, 667–68, 94 S.Ct. at 1355, 1357–58. *See also Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Where the damages sought clearly would come from the public treasury and not from the named individual defendant, it is impossible to maintain the fiction that the suit is not against the state. *Edelman v. Jordan,* 415 U.S. 663–66, 94 S.Ct. 1355–57; *Ford Motor Co. v. Department of Treasury,* 323 U.S. at 464, 65 S.Ct. at 350.

■ Appellant argues that because the only remedy sought in this case is prospective, injunctive relief as opposed to money damages, the State of Florida may be a § 1983 defendant in federal court. Whether or not a state may be a § 1983 defendant when Eleventh Amendment immunity has been waived or otherwise abrogated is a question involving interpretation of § 1983 which we do not decide.[3] Appellant fails to

---

**2.** As stated by Justice Frankfurter:

The course of decisions concerning sovereign immunity is a good illustration of the conflicting considerations that often struggle for mastery in the judicial process, at least implicitly. In varying degrees, at different times, the momentum of the historic doctrine is arrested or deflected by an unexpressed feeling that governmental immunity runs counter to prevailing notions of reason and justice. Legal concepts are then found available to give effect to this feeling, and one of its results is the multitude of decisions in which this Court has refused to permit an agent of the government to claim that he is *pro tanto* the government and therefore sheltered by its immunity.

*Larson v. Domestic and Foreign Corp.,* 337 U.S. 682, 709, 69 S.Ct. 1457, 1471, 93 L.Ed. 1628 (1949) (Frankfurter, J., dissenting).

**3.** 42 U.S.C. § 1983 reads in pertinent part:

Every *person* who, under color of any [state law] subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (emphasis supplied).

The district court held that a state cannot be a "person" under 42 U.S.C. § 1983. For this conclusion the district court relied on *Edelman*

*v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Neal v. Georgia,* 469 F.2d 446, 448 (5th Cir.1972), and *Collins v. Florida,* 432 F.2d 60, 61 n. 5 (5th Cir.1970).

It is true that in both *Collins* and *Neal* § 1983 actions against states as named defendants were dismissed. However in *Neal* the § 1983 action against the state explicitly was barred by the Eleventh Amendment, not an interpretation of "person" under § 1983. *Neal v. Georgia,* 469 F.2d at 448. In *Collins* the court stated that "[t]he state is not a proper party defendant in an action under § 1983." *Collins v. Florida,* 432 F.2d at 61 n. 5. However there, as in *Neal,* the action against the named state defendant also properly was barred by Eleventh Amendment immunity.

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and more recently in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court held that § 1983 does not act as a waiver or congressional abrogation of state Eleventh Amendment immunity. These cases leave open, however, the question of whether, when Eleventh Amendment immunity has been waived by the state or by congressional action other than § 1983, *see, e.g., Parden v. Terminal Railway,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), "person" in § 1983 can be interpreted to include states who allegedly are violating constitutional rights. As there had been no waiver of Eleventh Amendment immunity in

perceive, however, that when the state is the *named* party defendant the prospective injunctive relief/monetary damages distinction provides no basis for concluding Eleventh Amendment immunity does not apply. As the Supreme Court explained in *Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694, 699 (1982) (footnote omitted): "*Edelman* did not hold, however, that the Eleventh Amendment never applies unless a judgment for money payable from the state treasury is sought. It would be a novel proposition indeed that the Elev-

enth Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought."

 Thus, because appellant directly named the State of Florida in this § 1983 action and the State is cloaked in Eleventh Amendment immunity, the federal court has no jurisdiction over this facet of the action. Although Eleventh Amendment immunity may be waived in some circumstances, there is no basis for finding waiver in this case.[4] Accordingly, we affirm the

---

any of the cases cited by the district court or in *Quern v. Jordan* we conclude that the issue of whether a state can be a "person" under § 1983 when Eleventh Amendment immunity is not a bar to the action is an open one. *Cf. Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (Congress intended to include local governments in the "persons" subject to § 1983 liability).

4. Waiver of Eleventh Amendment immunity has been found in at least two general situations.

First of all, the state by its own action may waive Eleventh Amendment immunity. Such waiver may be express or implied. The State of Florida expressly has waived, to a limited extent, its state sovereign immunity for certain actions in tort. Fla.Stat. § 768.25. Such waiver does not automatically apply to Eleventh Amendment immunity in federal courts. When the statutory waiver "does not contain any clear indication that the state intended to consent to suit in federal courts," *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), it will not automatically be read to waive their immunity to suit in federal court. *Florida Dept. of Health v. Florida Nursing Home Ass'n.*, 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 53–54, 64 S.Ct. 873, 876–77, 88 L.Ed. 1121 (1944). *Cf. Stanley v. Schwalby*, 162 U.S. 255, 270, 16 S.Ct. 754, 760, 40 L.Ed. 960 (1896) (federal government's consent to suit against itself in a field of federal power, without more, does not authorize a suit in *state* court). Even if Fla.Stat. § 768.25 could be read as a waiver of Eleventh Amendment immunity, "[t]he Eleventh Amendment operates to bar suit except *insofar as the statute waives* state immunity from suit," *Ford Motor Co. v. Department of Treasury*, 303 U.S. at 462, 65 S.Ct. at 350 (emphasis added), and here the waiver applies only to negligence actions in tort, not the type of claim underlying this § 1983 action.

Implied waiver by the state has been found when a state engages in activity in an area in which they have empowered the federal government to act. *Parden v. Terminal Railway*, 377 U.S. 184, 191, 84 S.Ct. 1207, 1212, 12 L.Ed.2d 233 (1964) ("By empowering Congress to regulate commerce, then, the states necessarily surrendered any portion of their sovereignty that could stand in the way of such regulation"). *But cf. Employees of the Department of Public Health & Welfare v. Department of Public Health and Welfare of Missouri*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (no waiver of Eleventh Amendment immunity unless congressional intent to impose suit is explicit). While the point has been raised that perhaps the State of Florida waived its immunity by filing the malicious prosecution action, this activity is not of the sort that justifies finding such an implicit waiver. *See Ex parte Ayers*, 123 U.S. 443, 8 S.Ct. 164, 182–83, 31 L.Ed. 216 (1887) (mere fact that state contracts with individuals as would a private party does not mean state can be sued under the contract as can a private party).

The second category of waiver is where Congress explicitly abrogates a state's Eleventh Amendment immunity as an express condition of participation in federal programs. *Cf. Florida Dept. of Health v. Florida Nursing Home*, 450 U.S. at 153, 101 S.Ct. at 1036 (Stevens, J., concurring); *Edelman v. Jordan*, 415 U.S. at 673, 94 S.Ct. at 1361; *Employees of the Department of Public Health & Welfare v. Department of Public Health and Welfare of Missouri*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). *See generally*, Note, *Express Waiver of Eleventh Amendment Immunity*, 17 Ga.L.Rev. 513 (1983).

A third possible category of waiver is presented in cases such as *Gary W. v. State of Louisiana*, 601 F.2d 240 (5th Cir.1979), *affirming and enforcing*, 437 F.Supp. 1209 (E.D.La. 1976). There the lower court ordered relief for persons confined in mental health institutions in the State of Louisiana. The state was named as the defendant. No mention of Eleventh Amendment immunity from suit was made except in the Court of Appeals opinion where it was held that assessing costs against a state defendant does not infringe such immuni-

dismissal of the action against the State of Florida, but on Eleventh Amendment, not statutory, grounds.

## II. Oldham as Defendant

This leaves the § 1983 request for injunctive relief against State Attorney Oldham.

*Younger Abstention*

The district court properly concluded that abstention under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) was inappropriate. In *Younger* the Supreme Court held that in the interest of federalism federal courts should abstain from enjoining ongoing state criminal proceedings absent a showing of bad faith prosecution, harassment, or extraordinary instances of irreparable harm, *id.* at 44, 53–54, 91 S.Ct. at 750, 754–755; *see also Henry v. First National Bank of Clarksdale,* 595 F.2d 291, 300 (5th Cir.1979),[5] *cert. denied sub nom. Claiborne Hardware Co. v. Henry,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); reversing, in *Younger* situations, the principle of abstaining only in extraordinary circumstances. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Propper v. Clark,* 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480 (1949); *Scheinberg v. Smith,* 659 F.2d 476, 480 (5th Cir. Unit B 1981).[6]

Application of the *Younger* doctrine to ongoing state civil proceedings has been limited to those civil actions in aid of criminal jurisdiction or involving enforcement-type proceedings in which vital interests of the state *qua* state are involved. *See Middlesex County Ethics Committee v. Garden State Bar Ass'n.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). *Accord O'Hair v. White,* 675 F.2d 680, 695 (5th Cir.1982) (en banc); *Gresham Park Community Organization v. Howell,* 652 F.2d 1227, 1244–48 (5th Cir.1981). The malicious prosecution action here in issue is not in this category. The state and the state official as plaintiffs in the action serve no function different from that of private plaintiffs in purely private proceedings. *Cf. Moore v. Sims,* 442 U.S. at 423 n. 8, 99 S.Ct. at 2377 n. 8 (that state is a party to the state suit alone is insufficient to make *Younger* applicable). This is not a situation where vital state interests are at stake in the litigation. *Cf. Gresham Park Community Organization v. Howell,* 652 F.2d at 1244–48 and cases discussed therein. While we should give sensitive consideration to

ty. 601 F.2d at 246, relying on *Hutto v. Finney,* 437 U.S. 678, 696–97, 98 S.Ct. 2565, 2576–78, 57 L.Ed.2d 522 (1978). Accordingly the case could be read to stand for the proposition that where a state is engaging in ongoing, unconstitutional activity the federal court has the power to remedy that action. However, in *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), a similar action against the State of Alabama where injunctive relief relating to conditions at Alabama prisons had been ordered, the Supreme Court held that "[t]here can be no doubt, however, that suit against the State ... is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit," *id.* at 782, 57 L.Ed.2d at 1116, and dismissed the action against Alabama.

Accordingly, waiver is not automatically to be found where the state is alleged to be engaged in ongoing unconstitutional activity and the action in *Gary W. v. State of Louisiana, supra,* cannot be read to stand to the contrary.

*See Jagnandan v. State,* 538 F.2d 1166, 1182–85 (5th Cir.1976) (absent specific enabling legislation, Fourteenth Amendment does not abrogate Eleventh Amendment immunity). "[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." *Hagans v. Lavine,* 415 U.S. 528, 535 n. 5, 94 S.Ct. 1372, 1378 n. 5, 39 L.Ed.2d 577 (1974).

5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

6. All decisions of Unit B of the former Fifth Circuit are binding on this court. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

any ongoing proceedings in state courts, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1173 (11th Cir. 1982), the district court correctly concluded that here *Younger* was inapplicable.

The district court, however, did not address the possibility that another form of abstention, namely *Pullman* abstention, may be appropriate.

*Pullman Abstention and Certification*

 Cate argues that the First Amendment protection of the right to petition the government for redress of grievances absolutely bars states and state officials from bringing malicious prosecution actions against citizens who have sued the state and state officials in their official capacities for negligence. The state concedes that the First Amendment, at a minimum, requires that state officials must maintain a higher burden of proof than other plaintiffs in malicious prosecution actions, *i.e.*, must prove at least "actual malice," *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), as opposed to "legal malice." *See Wilson v. O'Neal,* 118 So.2d 101, 105 (Fla. 1st DCA), *cert. dismissed,* 122 So.2d 403, *app. dismissed,* 123 So.2d 677 (Fla.1960), *cert. denied,* 365 U.S. 850, 81 S.Ct. 813, 5 L.Ed.2d 814 (1961); *Duval Jewelry Co. v. Smith,* 102 Fla. 717, 136 So. 878 (1931). For the reasons discussed *infra* at 1185–1190, we have concluded that there is substantial merit to appellant's claim.

 The facts of this case thus pose an important constitutional issue on the scope of the First Amendment right to petition. In addition the Supreme Court of Florida has never interpreted the common law tort of malicious prosecution in light of the type of facts with which we are confronted; it is unsettled, as a matter of *state* law, whether state officials who have been sued in their official capacities for alleged negligence in their official duties, may be plaintiffs in malicious prosecution actions. Hence, we are confronted with facts presenting an important federal constitu-

tional issue and an unsettled question of state law which, when answered, may make final resolution of the constitutional question unnecessary. The general considerations underlying the doctrine of abstention originated in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) [hereinafter *Pullman*], therefore, are applicable. *See generally* Field, *Abstention in Constitutional Cases: The Scope of the* Pullman *Abstention Doctrine,* 122 U.Pa.L.Rev. 1071 (1974) (the two policies underlying *Pullman* abstention are avoidance of unnecessary decision of federal constitutional questions and concern for interpreting state law as would the state's highest court).

The *Pullman* abstention doctrine, however, is to be used only in "special circumstances." *Kusper v. Pontikes,* 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973); *Lake Carriers' Ass'n. v. MacMullen,* 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972); *Propper v. Clark,* 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480 (1949). *See also Wisconsin v. Constantineau,* 400 U.S. 433, 437–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971); *O'Hair v. White,* 675 F.2d 680 (5th Cir.1982) (en banc); *Nasser v. City of Homewood,* 671 F.2d 432, 439 (11th Cir.1982); *High Ol' Times, Inc. v. Busbee,* 621 F.2d 135, 139 (5th Cir.1980). Abstention is to be invoked particularly sparingly in actions involving alleged deprivations of First Amendment rights, *see, e.g., Zwickler v. Koota,* 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967); *Baggett v. Bullitt,* 377 U.S. 360, 378–79, 84 S.Ct. 1316, 1326–27, 12 L.Ed.2d 377 (1964), and other constitutional rights deemed fundamental, *see, e.g., Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *O'Hair v. White,* 675 F.2d at 694, even though the state law issue has not been resolved by the state supreme court. *Harman v. Forssenius,* 380 U.S. at 534–35, 85 S.Ct. at 1181–82; *O'Hair v. White,* 675 F.2d at 693. Given that this is a First Amendment case alleging immediate and ongoing irreparable injury,[7] and con-

---

7. *See* text *infra* at 1187–1189.

sidering the great costs imposed by abstaining in this type of case, *Baggett v. Bullitt*, 377 U.S. at 378–79, 84 S.Ct. at 1326–27; *see also* Field, *The Abstention Doctrine Today*, 125 U.Pa.L.Rev. 590, 591 (1977); Wright, *The Abstention Doctrine Reconsidered*, 37 Tex.L.Rev. 815 (1959), we decline to invoke *Pullman* abstention.

Nevertheless we do not ignore the related values of avoiding unnecessary decision of federal constitutional questions and guaranteeing that state law is interpreted correctly. *See generally Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The State of Florida, by providing a procedure for certification of state law issues to the Florida Supreme Court, Fla.Stat.Ann. § 25.031, has afforded a mechanism whereby these values can be given due protection while avoiding the substantial costs of abstention.

The prerequisite requirement for certification, that the state law issue be unsettled, *Lehman Brothers v. Schein*, 416 U.S. 386, 390–91, 94 S.Ct. 1741, 1743–44, 40 L.Ed.2d 215 (1974), is met in this case. *Cf. Scheinberg v. Smith*, 659 F.2d 476, 481 (5th Cir. Unit B 1981) (certification inappropriate where no construction of state law question could moot the constitutional issue presented). Accordingly we certify to the Florida Supreme Court the following questions:

1. Under the common law of Florida, may a state official who has been sued in his official capacity for alleged negligence in the exercise of his official duties, maintain an action for malicious prosecution against plaintiffs in the negligence action?

2. If the answer is "yes," what is the standard of malice that the state official/plaintiff must prove in order to prevail on the merits of the malicious prosecution action? How does this standard compare with the level of malice that must be proved in malicious prosecution actions where private parties are the plaintiffs?

*Preliminary Injunctive Relief*

■ Because maintenance of the status quo is the primary purpose of preliminary injunctive relief, *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981); *Collum v. Edwards*, 578 F.2d 110, 113 (5th Cir.1978), we grant appellant's request for such relief pending a response from the Florida Supreme Court and our disposition thereafter. In so doing we find that the district court abused its discretion in concluding that plaintiff-appellant failed to meet his burden of proof as to substantial likelihood of success on the merits and irreparable injury because he misconceived the import of appellant's First Amendment argument. *See Henry v. First National Bank of Clarksdale, supra*, 595 F.2d at 308.

■ To be entitled to injunctive relief, the moving party must establish that (1) there is a substantial likelihood that he ultimately will prevail on the merits of the claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue. *Henry v. First National Bank of Clarksdale, supra*, 595 F.2d at 308–09; *Compact Van Equipment Co., Inc. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir.1978); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). The district court denied relief in large part because it construed appellant's claim as being solely that, if the state court action continues, exercise of his First Amendment rights will be chilled *in the future*. *See* D.Ct.Mem. Order at 6, 8. In finding no substantial likelihood of success on the merits, the district court stated:

Petitioners filed an action against respondents on behalf of the administrator of the estate of Mary Jean Bradham, and, thus, were not deprived of their right to petition the government for redress of that particular grievance. Petitioners, however, do not allege that they were or are being deprived of a constitutional right but rather assert that the continuation of the state court proceedings will

chill the exercise of their constitutional right to petition in the future. It appears to be extremely speculative that to suggest that as a result of the institution of the pending malicious prosecution actions, petitioners will be threatened with similar suits if they petition the government for redress of grievances in the future. Consequently, it appears unlikely that petitioners will be able to show an infringement upon their constitutional right to petition the government for redress of grievances.

*Id.* at 6.

■ This misconstrues and gives insufficient weight to appellant's First Amendment claim. First of all, the test for determining a violation of First Amendment rights has never been whether or not the speaker or petitioner was successful in delivering his message before he was arrested or otherwise penalized for speaking or petitioning. What is relevant is whether any burden on First Amendment freedoms, either in the form of a prior restraint *or* a sanction imposed to prohibit *or* to punish exercise of First Amendment rights, *see, e.g., Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 283–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Perry v. Sindermann,* 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978); *id.* at 849, 98 S.Ct. at 1546 (Stewart, J., concurring) ("government may not prohibit *or punish* publication [of material in press' possession]"); *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (state lacks power to punish one who has engaged in protected speech), is justified by sufficiently compelling state interests. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

■ Although prior restraints are especially suspect under the First Amendment, *see, e.g., Nebraska Press Ass'n. v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), subsequent punishments too can

present an infringement of First Amendment rights. Thus the fact that appellant was not prevented directly from bringing the wrongful death action does not lead inexorably to the conclusion that his right to petition for redress of that particular grievance was not infringed. Second, appellant specifically alleged in his petition for injunctive relief not only that continuance of the state court proceedings would have an impermissibly chilling effect on his and others' exercise of the right to petition in the future, Petition for Injunctive and Declaratory Relief [hereinafter Petition] ¶ 15, but also that "[t]he continued prosecution of the civil state court action by the respondent OLDHAM ... would, under color of Florida's common law customs or usages, subject the petitioners to the deprivation of rights, privileges or immunities secured by the First and Fourteenth Amendments to the Constitution of the United States." *Id.,* ¶ 16. *See also id.,* ¶ 14. Because appellant does not argue only prospective "chill" the finding that he alleges only deprivation in the future is clearly erroneous.

In various contexts the First Amendment has been interpreted to make individual defendants constitutionally immune from defending actions for having exercised their right to petition. *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329 (7th Cir.1977) (petition by sending to governmental employee's superior complaints known to be false); *Sawmill Products, Inc. v. Town of Cicero,* 477 F.Supp. 636, 642 (N.D.Ill.1979) (petition in form of protesting presence of plaintiff's sawmill which subsequently was closed down by city ordinance); *Weiss v. Willow Tree Civic Association,* 467 F.Supp. 803, 816–18 (S.D.N.Y.1979) (petition by en masse lobbying of town officials and filing groundless judicial and administrative complaints); *Sierra Club v. Butz,* 349 F.Supp. 934, 938–39 (N.D.Cal.1972) (petition through filing lawsuit and administrative appeals to halt logging operation; constitutionally privileged even if motivated by actual malice). *See also Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 614–15 (8th Cir. 1980).

Similarly several courts have found that the right of free speech absolutely prevents the government from suing for defamation, *i.e.,* criticism of the government is absolutely privileged. *Johnson City v. Cowles Communication, Inc.,* 477 S.W.2d 750, 753 (Tenn. 1972); *State v. Time, Inc.,* 249 So.2d 328, 329–33 (La.App.1971); *City of Albany v. Meyer,* 99 Cal.App. 651, 279 P. 213 (1929); *City of Chicago v. Tribune Co.,* 307 Ill. 595, 139 N.E. 86 (1923) (quoted with approval in *New York Times Co. v. Sullivan,* 376 U.S. 254, 292, 299, 84 S.Ct. 710, 732, 11 L.Ed.2d 686 (1964)).

Recently, relying on the above-cited cases, the California Supreme Court held that a municipality may not be a plaintiff in a malicious prosecution action without infringing the right to petition. *City of Long Beach v. Bozek,* 31 Cal.3d 527, 183 Cal.Rptr. 86, 645 P.2d 137 (Cal.1982), *cert. granted and judgment vacated for determination of whether decision was based on state or federal constitutional right to petition,* —— U.S. ——, 103 S.Ct. 712, 74 L.Ed.2d 943 (1983) [hereinafter *Bozek*].[8]

As here, the issue in *Bozek* was "whether the bringing of such an action should be absolutely privileged, or protected only to the extent that it is not done with 'actual malice'; *i.e.,* with knowledge of the falsity of the allegations made in the complaint or with reckless disregard for their truth or falsity." *Id., citing New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). There the court emphasized that in California there is a procedure whereby governmental entities may recover costs and attorneys fees in frivolous actions brought against them by citizens, and thus concluded that the governmental interests in acting as plaintiffs in malicious prosecution actions did not justify the infringement of the right to petition.

A similar provision exists in Florida. *See* Fla.Stat. § 57.105 (1979). The Florida provision has been interpreted to serve primarily the same purposes as a malicious prosecution action. *See Russell v. State,* 417 So.2d 1119, 1121 (Fla.App. 5th DCA 1982).

The *Bozek* court held that, as a constitutional matter, "the bringing of suits against the government is absolutely privileged and cannot form the basis for imposition of civil liability for malicious prosecution." *Bozek,* 645 P.2d at 143. *See also Board of Ed. of Miami Trace Local School District v. Marting,* 7 Ohio Misc. 64, 217 N.E.2d 712, 717 (1966) (in apparent *dicta* in malicious prosecution action by school board, court stated: "permitting a Board to sue a taxpayer, who is denied judicial relief in a prior case, for malicious prosecution, in an unlimited amount can only result in self-censorship. Potential critics of official conduct would be foreclosed from bringing suit because of doubt that they would be permitted to, or could prove the facts, or for fear of the expense for having failed to do so. Any judicial construction or statutory provision prohibiting or unduly restricting this right would contravene the First and Fourteenth Amendments to the Federal Constitution") (citations omitted).

In each of the above-cited defamation or right to petition cases, where governmental authorities were plaintiffs, the balance between the governmental interests involved and the First Amendment right was struck in favor of First Amendment freedoms and absolute immunity from suit by governmental entities or officials. *See, e.g., Bozek,* 645 P.2d at 143; *Sierra Club v. Butz,* 349 F.Supp. at 938–39. We are substantially persuaded that the balance in the instant case would be struck similarly and find that the district court erred as a matter of law and therefore abused its discre-

---

**8.** The California Supreme Court decided preliminarily that "the act of filing suit against a governmental entity represents an exercise of the right of petition and thus invokes constitutional protection." *Id.,* 645 P.2d at 140, *relying on Eastern R. Conf. v. Noerr Motor,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), *Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct.

1585, 14 L.Ed.2d 626 (1965), *California Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), and cases cited in text *supra* at 1186–1187. Appellees do not refute that Cate was exercising his right to petition by filing the negligence action.

tion in concluding that there was no substantial likelihood of success on the merits.[9]

The district court's misconstruction of appellant's argument also affected the analysis of irreparable injury. The lower court stated:

> Generally, an alleged deprivation of a constitutional right is sufficient to constitute an irreparable injury. However, petitioners do not allege that they have been or are being deprived of a constitutional right. Rather, petitioners assert that the continuation of the state court proceedings will chill the exercise of their constitutional right to petition the government for redress of grievances in the future.

D.Ct. Mem. Order, 7–8 (citations omitted).

■ As stated *supra,* petitioner-appellant alleges more than that his freedom to exercise his right to petition will be chilled in the future. He alleges current deprivation, in the form of penalization for having exercised his right to petition in the past. Petition ¶ 16. "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B 1981), *citing Elrod v. Burns,* 427 U.S. at 373, 96 S.Ct. at 2689.[10] So too, direct penalization, as opposed to incidental inhibition, of First Amendment rights constitutes irreparable injury. *Johnson v. Bergland,* 586 F.2d 993, 995 (4th Cir.1978) (transfer of employee allegedly for exercise of First Amendment rights; "[v]iolations of first amendment rights constitute per se irreparable injury"); *Citizens for a Better Environment v. City of Park Ridge,* 567 F.2d 689 (7th Cir.1975). *Cf. Younger v. Harris,* 401 U.S. 37, 51, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971) (prosecution under statute making criminal those acts or that speech advocating commission of crime, sabotage or unlawful acts of force

**9.** Appellees argue that there is no substantial likelihood of success because in order to prevail on any claim under 42 U.S.C. § 1983 appellants must show that they have been deprived of a protected right *without due process of law.* The argument runs that until all state procedural protections have been tested no § 1983 claim may be maintained. In effect, appellees argue that state procedures must be exhausted before a § 1983 *action may be maintained in federal* court. This proposition has soundly been rejected by the Supreme Court. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *See also McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). In an attempt to avoid the no-exhaustion rule, appellees rely on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Buckley Towers Condominium, Inc. v. Buchwald,* 595 F.2d 253 (5th Cir.1979). Neither case controls the issues before us. In *Parratt* the Supreme Court held that where state procedures would provide adequate redress, deprivations of property due to negligent actions of state officials are not deprivations without due process of law. Therefore, there is no Fourteenth Amendment violation and, where only due process violations are alleged, no deprivation of a federal right that is cognizable under § 1983. The analysis in *Parratt* is uniquely applicable to cases where the basis of a § 1983 action is a due process claim and is irrelevant to appellant's First Amendment argument.

Similarly *Buckley Towers* is distinguishable. There a § 1983 action was brought seeking damages and injunctive relief from enforcement of state awarded attorneys fees. The action was dismissed and characterized by the Former Fifth Circuit as an attempt to obtain federal court review of a state court judgment because the only state action challenged was that of the state court judge in awarding the fees. *Buckley Towers Condominium, Inc. v. Buchwald,* 595 F.2d at 254. Where no state action is challenged, there is no cognizable § 1983 claim. *Hall v. Garson,* 430 F.2d 430, 439 (5th Cir.1970). The import of *Buckley Towers* is that the rendering of judgment by a state court does not provide the necessary state action; neither is there cognizable state action when a purely private party seeks a state court judgment. *Beker Phosphate Corp. v. Muirhead,* 581 F.2d 1187 (5th Cir.1978).

In the instant case there clearly is state action by State Attorney Oldham in instituting the malicious prosecution action. Nothing in *Buckley Towers* precludes § 1983 relief from state action which violates a plaintiff's constitutionally protected rights.

**10.** To the extent that an infringement of First Amendment rights is shown, some federal courts have held that irreparable injury justifying preliminary injunctive relief is presumed. *Community Communications Co., Inc. v. City of Boulder, Colo.,* 660 F.2d 1370 (10th Cir. 1981), *cert. dismissed,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982).

and violence, not absolutely unconstitutional because criminal activity could be sanctioned and statute has only "incidental" effect on First Amendment rights; thus no irreparable injury from criminal prosecution under the statute).

One reason for such stringent protection of First Amendment rights certainly is the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future. *See City of Long Beach v. Bozek,* 645 P.2d at 138, 141, 143. This does not mean, however, that only if a plaintiff can prove actual, current chill can he prove irreparable injury. On the contrary, direct retaliation by the state for having exercised First Amendment freedoms in the past is particularly proscribed by the First Amendment. *Mt. Healthy City School District v. Doyle,* 429 U.S. at 283–87, 97 S.Ct. at 574–76; *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

Here, the malicious prosecution action is a direct response to appellant's attempt to petition the government; it seeks both to penalize that activity and to deter it in the future. While the potential chilling effect of allowing the state or state officials to bring malicious prosecution actions may be primarily what would lead to an interpretation of the First Amendment barring such actions, *see City of Long Beach v. Bozek,* 645 P.2d at 138, 141, 143, the *source* of that chill, the direct penalization of citizens who have petitioned the government in the form of litigation by requiring them to defend a malicious prosecution action, provides the critical irreparable injury to those citizens, regardless of whether actual chill is proved.

An injury is "irreparable" only if it cannot be undone through monetary remedies. *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d at 338; *Spiegel v. City of Houston,* 636 F.2d 997 (5th Cir.1981).

Here, given a construction of the First Amendment absolutely barring the malicious prosecution action, a construction we have concluded is substantially likely, appellant has been penalized since the inception of the malicious prosecution action, and continues to be penalized, for exercise of his right to petition. Neither a monetary award nor prevailing on the merits of the state action could recompense this ongoing injury.

Furthermore, where injunctive relief is sought from irreparable injury arising in the context of state civil proceedings, "the relief sought [is] of course the kind that raises no special problem—an injunction against allegedly unconstitutional state action ... that is not part of a criminal prosecution." *Younger v. Harris,* 401 U.S. at 47 n. 4, 91 S.Ct. at 752 n. 4 (distinguishing *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964)). *See also id.* 91 S.Ct. at 757 (Stewart & Harlan, JJ., concurring).

Where state action in the context of state civil proceedings constitutes direct, as opposed to incidental, retaliation for exercise of First Amendment rights, sufferance of such retaliation "unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. at 373, 91 S.Ct. at 2690. Accordingly, the appellant has established irreparable injury and the district court's finding to the contrary was an abuse of discretion.

As to the two remaining requirements for injunctive relief, certification to the Florida Supreme Court is being undertaken in large part in recognition of the state's interest in assuring that unsettled questions of state law are resolved correctly, and in the first instance, by the state's highest court. Delaying our decision on permanent injunctive relief furthers that interest. Against this background, interim protection of the appellant's First Amendment rights clearly outweighs any damage to the interests of Oldham in continuing the malicious prosecution action pending resolution of this matter. As a safeguard to Oldham's interest, we remand to the district court to set appropriate bond to be paid by appellant.

The strong public interest in protecting First Amendment values combined with the interest in giving the state an opportunity to rule on this issue outweighs any countervailing interest in an uninterrupted malicious prosecution proceeding: hence the public interest favors injunctive relief.

Accordingly, preliminary injunctive relief, pending certification to the Florida Supreme Court and our analysis in light of the answers provided, is granted. While the jurisdiction of the Court of Appeals is retained, the matter is remanded to the district court for the limited purpose of setting an appropriate bond.