**John DILLARD, et al., Plaintiffs,**

v.

**CITY OF GREENSBORO, Defendant.**

Civ. A. No. 87–T–1223–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 14, 1994.

James U. Blacksher, Birmingham, AL, Julius L. Chambers, Scherlyn Ifill, N.A.A.C.P. Legal Defense Fund, New York City, and Edward Still, Birmingham, AL, for plaintiffs and intervenor-plaintiffs.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, Nicholas H. Cobbs, Jr., Greensboro, AL, David R. Boyd, Balch & Bingham, and Mortimer Parker Ames, III, and James H. Evans, Office of the Atty. Gen., Montgomery, AL, for defendants.

### ORDER

MYRON H. THOMPSON, Chief Judge.

On October 11, 1994, the court issued an opinion and injunction in this voting rights lawsuit. *Dillard v. City of Greensboro*, 865 F.Supp. 773 (M.D.Ala.1994).[1] In brief, the court ordered that a districting plan proposed by the plaintiffs in this case be used to remedy an admitted violation of § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973. On October 28, 1994, the court entered an order and injunction setting a schedule for a special election to implement the October 11 judgment. This cause is now before the court on defendant City of Greensboro's motion for a stay pending appeal. For the reasons that follow, the motion is denied.

### I. BACKGROUND [2]

At one time, the City of Greensboro elected its councilmembers by at-large elections. In 1987, in response to this lawsuit, the city conceded that its at-large system violated § 2 of the Voting Rights Act.[3] To remedy this violation, the court adopted a single-member districting plan proposed by the city.[4] Because the city's plan was legislative and thus had to be "precleared" pursuant to § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c,[5] *McDaniel v. Sanchez*, 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981), the court allowed the city to use the plan on an "interim" basis only.[6] *See Upham v. Seamon*, 456 U.S. 37, 43–44, 102 S.Ct. 1518, 1522, 71 L.Ed.2d 725 (1982) (per cu-

riam); *Burton v. Hobbie*, 561 F.Supp. 1029, 1036 (M.D.Ala.1983) (three-judge court).

At the time that Greensboro was arguing that the court should adopt its plan, the city knew that it could agree to the plaintiffs' plan submitted on December 11, 1991. The plaintiffs' plan would have been court-ordered rather than governmentally enacted and, therefore, not subject to preclearance. *See McDaniel*, 452 U.S. at 138, 101 S.Ct. at 2230; *Connor v. Johnson*, 402 U.S. 690, 691, 91 S.Ct. 1760, 1762, 29 L.Ed.2d 268 (1971) (per curiam). The city therefore had a choice between an interim plan that could be used only so long as the Attorney General had not interposed an objection, *Clark v. Roemer*, 500 U.S. 646, 652–55, 111 S.Ct. 2096, 2101–02, 114 L.Ed.2d 691 (1991), and a permanent plan that was not subject to § 5 preclearance. Greensboro chose to pursue an interim plan and thereby risk non-preclearance by the Attorney General. The court deferred to the city's choice, *White v. Weiser*, 412 U.S. 783, 795–96, 93 S.Ct. 2348, 2355, 37 L.Ed.2d 335 (1973), and the 1992 municipal elections were conducted under the interim plan proposed by the city.

Subsequently, pursuant to § 5, the United States Attorney General refused to preclear, and interposed an objection to, the 1992 plan. The city adopted a new plan in August 1993. Once again, the Attorney General interposed an objection under § 5. In her objections, the Attorney General suggested that, in drawing district lines, the city may have deliberately sought to limit black voting strength.

In response, in January 1994, the plaintiffs filed a renewed motion for further relief, asking the magistrate judge to recommend

---

1. The court amended its opinion on October 13, 1994. The amendment is included in the published opinion.

2. The court here sets forth only the basic procedural facts needed to place the motion for a stay in context. The full background is set forth in the October 11 opinion.

3. Defendant's selection of "subclass b" option filed on August 12, 1987.

4. Orders of July 13, 1992, and March 2, 1993. These orders followed recommendations issued by the magistrate judge on July 13, 1992, and February 11, 1993.

5. A law subject to § 5 must be precleared by either the Attorney General of the United States or the United States District Court for the District of Columbia before it may become effective.

6. Order of July 13, 1992.

adopting their 1991 plan.[7] The city continued to oppose the plaintiffs' plan, suggesting instead that the magistrate judge draw a new plan. In May 1994, the magistrate judge issued a recommendation that the court adopt the plaintiffs' plan and order immediate elections.[8] The city objected to the magistrate judge's recommendation and requested that the court itself draft a plan. In June 1994, the city attorney submitted to the court a plan that slightly modified the city's 1993 plan as an example of how the court could design its own plan.[9] The court, in its October 11 opinion, adopted the plaintiffs' plan.

## II. DISCUSSION

 Greensboro seeks a stay of the court's October 11, 1994 judgment pending appeal. A stay is considered "extraordinary relief" for which the moving party bears a "heavy burden." *Winston–Salem/Forsyth County Bd. of Educ. v. Scott,* 404 U.S. 1221, 1231, 92 S.Ct. 1236, 1241, 31 L.Ed.2d 441 (1971) (Burger, C.J., in chambers). The United States Supreme Court has held that in determining whether to grant a stay pending resolution of an appeal, courts must examine the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *see also United States v. Bogle,* 855 F.2d 707, 708 (11th Cir. 1988). Each of these factors points toward denying the motion for a stay.

### A.

It appears from its motion for a stay that Greensboro's argument on appeal will be that the court should have rejected the plaintiffs' plan and instead itself fashioned a plan for the city. The city does not fault the court for rejecting the 1994 plan the city's attorney

drew up and submitted. The court does not believe that, under these facts, the city will be able to argue successfully on appeal that the court should, or could, have found a better alternative to the plaintiffs' plan when the city itself did not come up with one in a timely manner. For this reason and other reasons given in the court's October 11 opinion, there is not a reasonable likelihood that Greensboro will prevail on appeal.

But more importantly, it should be emphasized that, in its motion for a stay, the city seeks to maintain the status quo pending appeal. It seeks not only to continue to use its current plan up through the next scheduled election in August 1996 but also to conduct the 1996 election under that plan if there has been no disposition on appeal by then. Even were the city to prevail on appeal, the status quo could not be maintained after August 1996. The Attorney General has objected to the current election plan, and, therefore, the city must replace that plan. In *Clark v. Roemer,* 500 U.S. 646, 654, 111 S.Ct. 2096, 2102, 114 L.Ed.2d 691 (1991), the Supreme Court stated that § 5 required that implementation of uncleared changes be enjoined "where the Attorney General interposed objections before the election." The city therefore cannot conduct the 1996 election under the current election plan.

Moreover, the city cannot continue to use its current plan up through the 1996 election. For two years, the current councilmembers have been serving under a plan that not only clearly violates the requirements of § 5, but one that, as the Attorney General found, may have been the product of intentional discrimination. This is two years too long. In addition, in its motion for a stay pending appeal, the city does not seek continued use of a legal plan, or even temporary implementation of a plan that, should it prevail on appeal, would be an appropriate post-appeal remedy. Rather, the city seeks to use the one plan that violates the Voting Rights Act. In this situation, where a plan that is clearly illegal

---

**7.** Plaintiffs' renewed motion for further relief filed on January 6, 1994.

**8.** Recommendation of the magistrate judge entered on May 16, 1994.

**9.** Defendant's letter filed on June 14, 1994.

under § 5 has already been in place too long and where, because of the failure to comply with § 5, the status quo must be changed whether or not the city prevails in its appeal, the city should not be allowed to continue to use its current plan absent compelling circumstances. *See Clark,* 500 U.S. at 660, 111 S.Ct. at 2105 ("In fashioning its decree granting relief, the district court should adopt a remedy that in all the circumstances of the case implements the mandate of § 5 in the most equitable and practicable manner and with least offense to its provisions.").

### B.

Greensboro cites a number of reasons why it will be irreparably injured. None of them is convincing. The city argues that holding a special election before resolving the appeal would undermine its right to appeal. However, as explained above, even if the city succeeds on appeal, it cannot continue with its current plan. Setting aside the current plan will not in any way undermine the city's appeal.

The city further argues that holding too many elections in a short period of time is chaotic, costly, and destabilizing. The city, however, has not explained how holding a special election at this time would be chaotic, costly, or destabilizing, nor has the city put forward any evidence to support this conclusory statement. Moreover, as explained previously, when the city successfully impressed upon the court in 1992 that the court should adopt the city's plan as an interim plan rather than the plaintiffs' plan as a permanent plan, the city knowingly took the risk that should the Attorney General later object to its plan, it would have to call a special election. Now that the Attorney General has refused to preclear the city's 1992 plan, the city seeks to avoid the consequences of its risk. Having made a choice of which option to pursue and having chosen the path that risked uncertainty, the city cannot now complain that it is unfair to bear the consequences of that choice.

Further, according to the city, if the judgment entered by the court on October 11 is reversed, the city will have to hold another election immediately after the appeal. It is, however, highly unlikely that a new election would be imminent in the wake of a reversal. On appeal, the city does not seek implementation of its own plan or even continued use of its current plan; instead, the city seeks an appellate directive to this court to assume the city's constitutional obligation of drafting a legally acceptable plan. Therefore, setting aside the court's October 11 judgment would not result in the immediate adoption of a new plan for the city, but rather in the remand of the case for further proceedings, including the retention by the court of its own expert to assist in drawing up a plan for the city.

The city also argues that, by requiring elections now, the incumbent councilmembers will be unable to serve out their full terms. When the current councilmembers ran for election in 1992, however, they knew or should have known that the court had implemented the 1992 plan on an interim basis and that the plan was subject to preclearance by the Attorney General. Cutting their terms short, therefore, should not violate any expectations. *See Burton,* 561 F.Supp. at 1034–35 (where court gave "[c]lear and unequivocal notice . . . to members of the Legislature and the public that the 1982 elections were for a one-year term," "[i]ncumbent legislators . . . ha[d] no legal or moral right to complain that their terms are being foreshortened").

Finally, perhaps the most compelling reason to reject the city's request to be allowed to continue to use its illegal current plan is that, back in 1992, after the Attorney General had objected to the city's plan, the city still had available, but failed to take advantage of, other means to validate its continued use of the 1992 plan. Under § 5 of the Voting Rights Act, a state or local law subject to the federal statute must be precleared by either the Attorney General of the United States or the United States District Court for the District of Columbia before it may become effective. 42 U.S.C.A. 1973c. The city therefore had an alternative avenue by which it could have obtained preclearance: it could have filed a separate lawsuit in the United States District Court for the District of Columbia requesting a declaration that its districting plan did not violate § 5. The city chose not

to do this in 1992, and, as far as the court is aware, still has not pursued this course. To allow the city to continue to use its clearly illegal current plan for another moment, let alone for another year and a half and beyond—in light of the city's longstanding past default on its statutory obligation to pursue an available alternative avenue for preclearance and in light of the city's current failure to pursue this avenue although it is still available—would be not only to reward the city for its past noncompliance with § 5 but to reward it for its present, and to encourage its future, noncompliance as well.

The city further argues that, because the special election schedule requires preclearance, meeting the timetable might not be possible. The court adopted the schedule out of necessity and thus on only an "interim" basis, subject to action by the Attorney General. Should preclearance not be forthcoming by the time of the special election, the election could still go forward. *Upham v. Seamon,* 456 U.S. 37, 43–44, 102 S.Ct. 1518, 1522, 71 L.Ed.2d 725 (1982) (per curiam).

## C.

■■■ The injury the plaintiffs would suffer if the court granted the stay would be significant and irreparable. An injury is irreparable "if it cannot be undone through monetary remedies." *Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir.1983). The injury alleged by the plaintiffs is denial of the right to participate effectively in the political process. As the Supreme Court has recognized,

"the right of suffrage is a fundamental matter in a free and democratic society.... [E]ach and every citizen has an inalienable right to full and effective participation in the political processes of his State's legislative bodies."

*Reynolds v. Sims,* 377 U.S. 533, 561–62, 565, 84 S.Ct. 1362, 1381, 1383, 12 L.Ed.2d 506 (1964). Given the fundamental nature of the right to vote, monetary remedies would be inadequate compensation for the plaintiffs. *Cf. Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality opinion) ("loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury").

## D.

The public interest is best served by denying the city's motion for a stay. With § 5, "Congress expressly indicated its intention that the States and subdivisions, rather than citizens seeking to exercise their rights, bear the burden of delays." *Perkins v. Matthews,* 400 U.S. 379, 396, 91 S.Ct. 431, 441, 27 L.Ed.2d 476 (1971); *see also State of South Carolina v. Katzenbach,* 383 U.S. 301, 328, 86 S.Ct. 803, 818, 15 L.Ed.2d 769 (1966) (Voting Rights Act was designed "to shift the advantage of time and inertia from the perpetrators of the evil to its victims"). For over two years, the citizens of Greensboro have been governed by councilmembers elected under a plan that not only violates § 5 but one that the Attorney General believes may have been the product of deliberate racial discrimination; this is two years too long. *See Clark,* 500 U.S. at 652–55, 111 S.Ct. at 2101–02. In addition, in the meantime, the city has not sought preclearance in the United States District Court for the District of Columbia. An immediate election under districts that fully vindicate the rights of the plaintiffs under § 5 is a public priority.

## III. CONCLUSION

Finally, the city's suggestions in its motion for a stay that the Attorney General's objections to its 1992 and 1993 plans are minor, if not clearly meritless, and that the fact that the court does not have before it any arguably acceptable plan other than the plaintiffs' is the fault of the Attorney General, should not go without a response. As stated, if the city disagreed with the Attorney General's findings, it should have filed a separate lawsuit in the United States District Court for the District of Columbia requesting a declaration that its districting plans did not violate § 5. Moreover, if the city had done just this back in 1992 and 1993 and if, as the city contends, the Attorney General's objections are meritless, then, more likely than not, this court would have long ago had before it a city-adopted and precleared plan. The city

can blame no one but itself for the present circumstances.

For the reasons stated above, it is ORDERED that defendant City of Greensboro's motion for a stay pending appeal, filed on October 28, 1994, is denied.