| 1 PLAINTIFF NAME | 2 PROPERTY* NAME | 3 DATE A** | 4 DATE B*** | 5 DATE C**** |
|---|---|---|---|---|
| WARE, | FE | 12/20/71(n) | · 1/13/72 | 7/28/77 |
| William H., Sr. | IA | 12/21/77(d) | 1/21/78 | —— |

\* IA–Imperial Acres
  FE–Flagler Estates
  OP–Orlando Pines
\*\*\* Date of First
  Scheduled Payment

\*\* Date Purchase contract was
  signed (d) or notarized (n)
\*\*\*\* Date of Warranty Deed

UNITED STATES of America
v.
Carlos Enrique LEHDER–RIVAS, et al.
No. 81–82–Cr–J–12.
United States District Court,
M.D. Florida,
Jacksonville Division.
Aug. 21, 1987.

Robert W. Merkle, U.S. Atty., Ernst D. Mueller, Asst. U.S. Atty., Jacksonville, Fla., for the Government.

Edward R. Shohat, Miami, Fla., and Jose M. Quinon, Coral Gables, Fla., for defendant Lehder.

## ORDER

MELTON, District Judge.

On August 7, 1987, a Temporary Restraining Order and an Amended Temporary Restraining Order were entered, both of which temporarily enjoined defendant Carlos Enrique Lehder-Rivas ("Lehder"), his attorneys, and his agents from conducting any surveys or studies of individuals residing in the Middle District of Florida concerning defendant Lehder. Specifically, the restraining orders temporarily prohibited the following activities: telephone, written, and personal solicitation of opinions, answers to opinions, and answers to questions; solicitation of any agreement to serve on a mock jury; and the staging of a mock trial using jurors who reside in the Middle District of Florida. Counsel for defendant Lehder and counsel for the government were ordered to brief all issues relevant to defendant Lehder's right to contact and survey potential venirepersons and the right of the government to have access to any information compiled as a result of any and all surveys previously conducted by defendant. The briefs were timely filed on August 17, 1987. Thereafter, on August 19, 1987, the Court held an evidentiary

hearing and heard argument of counsel on the matter of whether to dissolve the temporary restraining order and amended temporary restraining order or make the orders permanent.[1] Upon consideration of the arguments of counsel, the evidence presented at the August 19, 1987 hearing, and the applicable law, the Court is of the opinion that the temporary restraining order and the amended temporary restraining order should be vacated.

In determining whether the government's request that defendant Lehder be enjoined for the duration of this case from contacting potential venirepersons for the purpose of conducting a survey, poll, or mock trial, the Court is guided both by pertinent first amendment principles, *see Nebraska Press Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Levine v. United States District Court*, 764 F.2d 590 (9th Cir.1985), and factors the Eleventh Circuit Court of Appeals has determined must be met for a preliminary injunction to issue in a civil matter. *See Cate v. Oldham*, 707 F.2d 1176 (11th Cir.1983). Application of the standards by which the restraint sought by the government is measured makes clear that the government has failed to present a factual basis that warrants such " 'an extraordinary and drastic remedy.' " *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983) (quoting *Texas v. Seatrain International*, 518 F.2d 175, 179 (5th Cir.1975)).

The Ninth Circuit Court of Appeals in *Levine*, 764 F.2d at 590 had occasion to review a restraining order issued by a district court in which the attorneys for the defendant and the government were prohibited from communicating with the media regarding the merits of the case. Characterizing such an order as a prior restraint on the attorneys' first amendment right to free speech, the court applied a strict scrutiny standard "because of the peculiar dangers of such restraints." *Id.* at 595 (citation omitted). According to the court, the government had the burden of proving that "(1) the activity restrained pose[d] either a clear and present danger or a serious and imminent threat to a protected competing interest;[2] (2) the order [was] narrowly drawn; and (3) less restrictive alternatives [were] not available." *Id.* (citations omitted). The court found that the district court's conclusion that publicity posed a serious and imminent threat to the administration of justice was correct. The court did, however, conclude that the restraining order was overbroad because there are many extrajudicial statements that "present no danger to the administration of justice." *Id.* at 599.

As an initial matter, the Court finds that the restraining order sought by the government in this cause is a prior restraint on the first amendment rights of defendant Lehder. Further, while the factual underpinnings of *Levine* differ from those of the present case, it is the Court's position that the test used by that court and the rationale espoused therein are applicable to the present case. Therefore, the Court must determine whether the government has established that the polling and surveying of potential venirepersons, and the staging of a mock trial create either a clear and present danger or a serious threat to the administration of justice.

At the August 19, 1987 hearing, the government relied on the exhibits it had attached to its motion for an injunction and the original tape recording of a conversation between Debra Dwyer, a special agent for the F.B.I., and an individual conducting a telephone interview on behalf of defend-

---

1. This differs from the typical procedure in a civil case in which the hearing would have been to determine whether to issue a preliminary injunction. The posture of this case is such, however, that the continuation of the restraint of defendant Lehder's activities would have been for the duration of the case thus making the injunction permanent.

2. The district court which entered the temporary restraining order under scrutiny in *Levine* labeled the compelling interest a "serious and imminent threat to the fair administration of justice." *Levine*, 764 F.2d at 590. The compelling interest sought to be protected by the government in this case is properly framed in identical terms.

ant Lehder.[3] The government, relying on this evidence and evidence presented by defendant Lehder, argued that the phrasing of certain survey questions, coupled with the number of persons that will have been contacted once the survey has been completed could potentially taint some prospective jurors.[4] The Court finds that the government has failed to offer sufficient evidence to establish that the survey at issue poses an imminent threat to the administration of justice, namely, that the survey is likely to taint the potential venire. Based on this determination the Court holds that to enjoin permanently defendant Lehder from surveying or polling potential jurors, absent a more convincing factual basis, would amount to an unconstitutional prior restraint on his first amendment right to free speech.[5]

The Court's determination that the government has not carried its burden of establishing a serious and imminent threat to the fair administration of justice is further bolstered by application of the four-factor test the Eleventh Circuit requires a party to meet when seeking a preliminary injunction in a civil case:

> To be entitled to injunctive relief, the moving party must establish that (1) there is a substantial likelihood that he will prevail on the merits of the claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) the public interest will not be harmed if the injunction should' issue.

*Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983) (citations omitted). As noted above, the entry of an injunction on the matter at issue herein would amount to a permanent injunction; therefore, the first prong of the *Cate* test is inapplicable.

The government has failed to convince the Court that there is a substantial threat that it will suffer irreparable injury if the injunction is not granted. Even assuming arguendo that some of the persons contacted by defendant Lehder for the purpose of conducting a survey or poll are called to serve on the jury panel in this case, the government has not shown that this in and of itself will result in the inability of the Court to select a fair and impartial jury. In any event, this potential problem can be cured during voir dire.

As discussed above, the injunction of the type sought by the government serves as an impermissible prior restraint on defendant Lehder's first amendment right to free speech and his right to prepare an effective defense at trial.[6] In applying the third factor set forth in *Cate*, the Court must decide whether the government has shown that the threatened injury outweighs the harm defendant Lehder will suffer if the injunction issues. The government has failed to do so. The possibility that some of the individuals called to serve on the venire in this case may have been polled or surveyed does not outweigh the infringement of defendant's first amendment right

---

3. The exhibits attached to the government's motion for the injunction included copies of two newspaper advertisements placed in the Florida Times-Union by the trial consultant conducting a survey on defendant's behalf, a transcript of Agent Dwyer's conversation mentioned above, a copy of a juror questionnaire previously submitted to the Court by defendant, and a copy of a motion filed by defendant in which he asked for an evidentiary hearing to present data concerning the community's overwhelming fear of defendant and the community's belief that defendant is guilty.

4. Although 2100 persons have been "contacted" thus far in the course of obtaining 186 respondents, defendant's poll administrator testified that only the smaller number were asked the questions to which the government objects.

The remainder hung up or refused to participate during the preliminary portion of the poll.

5. This should not be misinterpreted as an unconditional endorsement of polling by the defendant. To the contrary, the risk that potential jurors could be tainted is heightened after the venire panel is identified. For that reason, the Court will monitor any polling or surveying in the time period between the venire panel being called and the commencement of trial. *See infra* p. 830.

6. Defendant Lehder has moved for a change of venue on the ground that pretrial publicity has destroyed his opportunity to get a fair trial in Jacksonville. A properly conducted poll, if completed within the schedule set by the Court, could be presented by defendant Lehder as part of his case to meet the high standard of pre-voir dire change of venue motions.

to free speech or his right to prepare an effective defense at trial. The Court notes that any venireperson who has been contacted by defendant is likely to make this known during voir dire, and defendant has agreed to provide the Court with the names of those persons surveyed for the purpose of comparison with the venire list.

Finally, the government has failed to establish that the public interest will be harmed if the injunction should issue. The Court recognizes that the public has a fundamental interest in the integrity of the judicial process. Allowing defendant Lehder to exercise his first amendment right to free speech will not, however, infringe upon this important public interest because in the final analysis the total number of potential jurors contacted will be small. Additionally, the Court is confident that those venirepersons who were contacted, if any, will be detected during voir dire.

Although the Court finds that the government has not carried the necessary burden for the issuance of an injunction in this cause, it is clear that under some circumstances the granting of an injunction might be necessary to ensure "the legitimate expectation of the government and the public that the judicial system will produce fair results." *Levine*, 764 F.2d at 597. This determination must be made on a case-by-case basis. Clearly, in a situation where a defendant goes beyond the bounds of seeking information and, in essence, attempts to use a poll or survey as a vehicle to manufacture publicity, the Court would act swiftly to limit such activities. *See id.* (stating that "the judiciary cannot escape the task of fixing the limits within which a defendant may attempt to create publicity"). In the present case, the small number of potential venirepersons that may in fact be contacted does not rise to such a level that it can be viewed as creating publicity. The phrasing of some of the questions in the survey, however, approaches what could be viewed as the dissemination of information that could potentially create publicity by imparting alleged facts of the case to various individuals in the community.

While removing the prohibition against defendant Lehder's survey, the Court is not divesting itself of its supervisory role regarding such matters. Defendant Lehder will be required, on or after September 9, 1987, to promptly notify the Court of his intention to contact any resident of the Middle District of Florida, Jacksonville Division, for the purpose of conducting a poll or survey or for the purpose of staging a mock trial. The Court arrived at this date after being informed by the jury administrator for the Jacksonville Division that the venire panel for this case will be summoned by that date. Therefore, timely notice by defendant Lehder will enable the Court to determine whether contact with residents of the Middle District of Florida, Jacksonville Division, for the aforementioned purposes is likely to create interference with the fair administration of justice and the public's "expectation that the judicial system will produce fair results." *Levine*, 764 U.S. at 597.

The government in its motion for injunctive relief and in a subsequent motion filed on August 17, 1987, seeks disclosure of all data gathered and compiled by defendant through his survey. The Court will defer ruling on the government's request until the hearing scheduled for September 9, 1987. If the government perceives a need for a continuance of that hearing, the Court will entertain an appropriate motion at that time.

In accordance with the foregoing, it is

ORDERED AND ADJUDGED:

1. That the Temporary Restraining Order and the Amended Temporary Restraining Order, both entered on August 7, 1987, are hereby vacated;

2. That on or after September 9, 1987, defendant Lehder, his attorneys, and his agents are hereby required to give timely notice to the Court of any intention to contact residents of the Middle District of Florida, Jacksonville Division, for the purpose of conducting a poll or survey or for the purpose of staging a mock trial; and

3. That the government's motion to disclose, filed herein on August 17, 1987, is hereby deferred until the hearing set for September 9, 1987.