**UNITED STATES of America**

v.

**Carlos Enrique LEHDER–RIVAS, et al.**

**No. 81–82–Cr–J–12.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 18, 1987.

See also, 667 F.Supp. 827 and 668 F.Supp. 1523.

Robert W. Merkle, U.S. Atty., Ernst D. Mueller, Asst. U.S. Atty., Jacksonville, Fla., for the Government.

Edward R. Shohat, Miami, Fla., and Jose M. Quinon, Coral Gables, Fla., for defendant Lehder.

## MEMORANDUM ORDER

MELTON, District Judge.

This cause is before the Court on the Government's Renewed Application for Permanent Injunction Barring Surveys or Polls of Registered Voters in the Middle District of Florida, filed herein on September 8, 1987. Defendant Carlos Enrique Lehder-Rivas ("Lehder") filed a response in opposition to the government's renewed application for a permanent injunction on September 14, 1987.[1] Incorporated in defendant Lehder's responsive pleading is a motion for permission to conduct a "jury profile."[2] At the Court's request, Lehder filed the proposed survey questions with which he intends to construct the jury profile.[3] A hearing on the matter was held on September 15, 1987, and at that time, upon consideration of the arguments of counsel for defendant Lehder and counsel for the government and upon review of the applicable law, the Court granted the government's motion for a permanent injunction, enjoining defendant Lehder, his attorneys, and his agents from surveying or polling registered voters who reside in the Middle District of Florida, Jacksonville Division.[4] The basis of the Court's ruling follows.

### Background

On August 7, 1987, a Temporary Restraining Order and an Amended Temporary Restraining Order were entered, both of which temporarily prohibited Lehder, his attorneys, and his agents from conducting any surveys or studies of individuals who

---

1. Defendant Lehder and the government both adopted their earlier memoranda with regard to defendant Lehder's change of venue survey.

2. A jury profile is the result of a community attitudinal survey designed to discover specific attitudes about the defendant and the issues involved in a particular case. This type of analysis "makes a correlation between observed characteristics and known attitudes to predict how a prospective juror is *likely* to react in a given situation." Covington, *Use of Expert Assistance in Jury Selection,* Case and Comment, July-Aug. 1985, at 20 (emphasis in original).

3. The proposed questions were sent to the Court on September 15, 1987, and were filed *in camera* and *ex parte* at the September 16, 1987, hearing.

4. Although the government requested that the injunction bar contact with registered voters in the entire Middle District, it stated at the hearing that it would not be unreasonable to limit the prohibition to registered voters residing in the Jacksonville Division. The import of the Court's decision to narrow the scope of the injunction is discussed *infra* at pp. 1569–70.

reside in the Middle District of Florida regarding defendant Lehder.[5] The restraining orders specifically enjoined the following activities: telephone, written, and personal solicitation of opinions, and answers to questions; solicitation of any agreement to serve on a mock jury; and the staging of a mock trial using jurors who reside in the Middle District of Florida. Thereafter, the Court on August 19, 1987, held an evidentiary hearing and heard arguments of counsel on the matter of whether to vacate the temporary restraining orders or make the orders permanent.[6] After giving full consideration to the memoranda of counsel in support of and in opposition to the injunction, the evidence presented, and the arguments of counsel, the Court entered an order dissolving both the Temporary Restraining Order and the Amended Temporary Restraining Order. *See* Order of August 21, 1987, 667 F.Supp. 827 (M.D.Fla. 1987).[7]

While the Court dissolved the restraining orders and allowed Lehder to complete his survey with regard to his motion to change venue, the Court made clear that defendant Lehder's right to contact potential jurors is not unbridled. *See id.* at 8 (stating that "the Court is not divesting itself of its supervisory role regarding such matters"). Specifically, defendant Lehder, his attorneys, and his agents were ordered to notify the Court of any intention to contact residents of the Middle District of Florida, Jacksonville Division on or after September 9, 1987, for the purpose of conducting a poll or survey, or for the purpose of staging a mock trial. The Court arrived at the September 9, 1987 date after being informed by the jury administrator that the venire panel for this case will have been summoned by that date.

At the conclusion of the September 9, 1987, hearing on Lehder's motion for prevoir dire change of venue, defendant Lehder's counsel informed the Court of their intention to conduct another poll or survey of registered voters residing in the Middle District of Florida, Jacksonville Division, in order to develop a jury profile. The Court immediately set a hearing for September 16, 1987, to consider both the government's renewed application for a permanent injunction with regard to defendant's polling and defendant's request to conduct another poll. Defendant was ordered to file a response to the government's motion and further was instructed to set forth the purpose and parameters of its intended jury profile survey. As stated earlier, defendant filed his response on September 14, 1987, and furnished the Court with a copy of the proposed survey on September 15, 1987.

### Discussion

### A. Argument of the Parties

The government seeks to have Lehder, his attorneys, and agents permanently enjoined from conducting surveys or polls of registered voters in the Middle District of Florida. The government contends that defendant's first amendment right to conduct a survey or poll of registered voters in the Middle District of Florida after September 9, 1987, must yield to the right of all par-

---

**5.** The Amended Temporary Restraining Order was entered because one of Lehder's agents subject to the restraint was inadvertently omitted from the initial restraining order.

**6.** As the Court explained in its order lifting the restraint, the typical procedure in a civil case would have been to have held a hearing to determine whether a preliminary injunction should issue. The posture of the case at that time was such that the continuation of the restraint of defendant Lehder's activities would have remained in effect for the duration of the case thus making the injunction permanent. *See* Order of August 21, 1987, at p. 828 n. 1.

**7.** The poll that gave rise to the temporary restraining orders and the subsequent hearing on

the necessity of a permanent injunction was related to defendant Lehder's motion for a prevoir dire change of venue. The statistical data gathered was presented to the Court at an evidentiary hearing held on September 9, 1987. Defendant Lehder offered the findings of his pollster to support his argument that pretrial publicity has destroyed his opportunity to get a fair trial in Jacksonville. After hearing the testimony of defendant Lehder's pollster and after thoroughly reviewing the documentary evidence, the Court found that pretrial publicity had not become so pervasive that the level of prejudice in the community would render futile an attempt to select a jury. Accordingly, Lehder's motion to change venue was denied without prejudice to its renewal if required after jury selection is attempted.

ties to a fair trial. It is the government's position that further polling or surveying is analogous to the dissemination of prejudicial publicity by defendant's attorneys and agents. While recognizing that defendant Lehder's first and sixth amendment rights are implicated by a prohibition against further polling and surveying, the government argues that such contact with registered voters of the Middle District of Florida creates a serious and imminent threat to the fair administration of justice.[8]

Defendant in his opposition to the government's request for a permanent injunction and in his motion for permission to conduct a community attitudinal survey essentially reasserts the arguments he raised in his memorandum regarding the initial temporary restraining order: An order forbidding defendant Lehder and his agents from conducting a survey of registered voters who reside in the Middle District of Florida, Jacksonville Division, violates his first amendment right to know how the community perceives him and how he can obtain a fair trial, as well as his sixth amendment rights to effective assistance of counsel and a fair trial. According to defendant Lehder, the government has failed to show that a community attitudinal survey constitutes either a clear and present danger or reasonable likelihood of danger to the fair administration of justice since the survey is designed to avoid the questioning of any persons summoned to be on the venire for this case.[9]

## B. General Principles

In its order of August 21, 1987, lifting the temporary restraining orders, this Court stated:

In determining whether the government's request that defendant Lehder be enjoined for the duration of this case

from contacting potential venirepersons for the purpose of conducting a survey, poll, or mock trial, the Court is guided both by pertinent first amendment principles, *see Nebraska Press v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Levine v. United States District Court,* 764 F.2d 590 (9th Cir.1985), and factors the Eleventh Circuit Court of Appeals has determined must be met for a preliminary injunction to issue in a civil matter. *See Cate v. Oldham,* 707 F.2d 1176 (11th Cir.1983).

Order of August 21, 1987, at p. 828. The Court is of the opinion that these same legal precepts control its analysis in determining whether to enjoin defendant Lehder from further contact with registered voters residing in the Middle District of Florida, Jacksonville Division. While the identical legal principles are pertinent, their application to the facts and circumstances as they presently exist in this case leads the Court to a different conclusion.

## C. *Levine* Analysis

In its review of a district court's restraining order enjoining defense counsel from communicating with the media about the merits of a case, the Ninth Circuit Court of Appeals in *Levine,* 764 F.2d at 590, held that such a prohibition constituted a prior restraint on counsels' first amendment right to free speech and found that the government had the burden of proving that the "... activity restrained pose[d] either a clear and present danger or a serious and imminent threat to a protected competing interest." Additionally, the government had to show that the restraining order was narrow in scope and that less restrictive means were not available. The compelling interest at stake in *Levine* was characterized as a "serious and imminent threat to

---

**8.** With regard to defendant Lehder's sixth amendment right to a fair trial, the government asserts that the reasons defense counsel espouse for conducting an additional survey, that is, to determine the attitude of the community and to conduct a mock trial, are not legitimate; therefore, according to the government, prohibiting defendant Lehder from conducting surveys and polls will not rise to the level of a constitutional violation.

**9.** Defendant states in his memorandum that the first question surveyors will ask an individual is whether he or she has been summoned to serve on a jury panel in federal court. The proposed survey submitted by defendant differs in that it inquires whether the individual or anyone in his or her family has been called for jury duty. In either case, an affirmative answer would terminate the conversation.

the fair administration of justice." *Id.* As this Court stated in its August 21, 1987, order, the compelling interest in this cause which the government seeks to protect is properly framed in identical terms. *See* Order of August 21, 1987, at p. 828 n. 2. The *Levine* court agreed with the district court that publicity posed a serious and imminent threat to the administration of justice, but determined that the restraint drafted by the lower court was overbroad because it precluded many extrajudicial statements that do not threaten the fair administration of justice. *Levine*, 764 F.2d at 599.

This Court previously determined that an injunction precluding defendant from conducting a survey or poll is a prior restraint on his first amendment right to free speech. *See* Order of August 21, 1987, at pp. 828–29; *see also In re Halkin*, 598 F.2d 176, 182–83 (D.C.Cir.1979). Therefore, following the guidelines set forth in *Levine*, the Court must decide whether the polling and surveying of registered voters residing in the Middle District of Florida, Jacksonville Division, creates a clear and present danger or a serious threat to the fair administration of justice. If the Court determines that a threat to the administration of justice exists, it must further consider whether the remedy of an injunction is overbroad and whether less restrictive alternatives exist.[10]

This analysis must acknowledge the quality of the first amendment interests which are threatened by the restraints at issue. In the case of the venue study,

defendant sought to accumulate knowledge in order to assist the Court in determining the propriety of venue. Free speech rights reach their zenith when the benefits enure to the public. In contrast, the jury profile study is described by defense counsel as "pure work product" from which only defendant gains benefit. The barest minimum of free speech values are involved, notwithstanding defendant's assertion of the chimerical "right to Know," aspect of free speech.[11]

Based on a review of the arguments of counsel, evidence presented by defendant and the government with regard to polls and surveys, and defendant's proposed attitudinal survey, the Court has determined that several factors weigh heavily against defendant's right to continue to survey potential jurors. These factors indicate that this kind of unsupervised, *ex parte* contact clearly presents a danger to the fair administration of justice.[12] Specifically, the following circumstances combine to render further polling or surveying by defendant in the Jacksonville Division a threat to judicial integrity: (1) The trial is scheduled to begin in less than three weeks; (2) A venire of 300 has been summoned; (3) This is a highly publicized case; (4) Defendant Lehder's agents have previously contacted 2365 residents of the Jacksonville Division in completing the pre-voir dire survey and would need to contact more than one thousand Jacksonville Division residents to compile data for a jury profile; (5) If evidence of defendant's pre-voir dire

---

**10.** The Court acknowledged in the August 21, 1987 order that the restraining order at issue in *Levine* differs from the prohibition the government seeks in this case. The court determined, however, that the circumstances were sufficiently analogous to warrant a similar analysis.

**11.** Defendant's citation of *Virginia Pharmacy v. Virginia Citizens Consumer Counsel, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), illustrates the ebb tide of free speech values in the "right to know" concept. *Virginia Pharmacy* extended some, but not full, protection to commercial speech. The failure to extend full protection is rooted in the Supreme Court's analysis that commercial speech's sole value is the "right to know" price and product information. The Supreme Court left open the door to prohibit

harmful commercial information, regardless of any "right to know." *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico,* —— U.S. ——, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986). Indeed, the Court is not aware of precedent that posits an unqualified, private "right to know" such as defendant would claim in this case.

**12.** The phrase "fair administration of justice" encompasses a variety of notions. Clearly, a defendant's right to a fair trial falls under this rubric. Included also, however, is "the legitimate expectation of the government and the public that the judicial system will produce fair results." *Levine,* 764 F.2d at 597; *see also Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

survey is credible, the Court could have some difficulty selecting a jury and therefore may have to summon an additional venire; (6) Defendant has failed to show that he cannot conduct voir dire adequately without a jury profile; [13] (7) Even if a jury profile would marginally enhance defendant's preparation for voir dire, contact between defendant's agent and even one person who has been summoned for the venire would adversely affect the Court's ability to select a jury; [14] (8) In any event, defendant has had sufficient time to conduct surveys and polls with regard to this community's attitude toward defendant and the issues involved in this case; (9) There has been no showing that the demographic data necessary to construct a jury profile cannot be obtained in a community other than the Jacksonville Division; and (10) Several of the proposed survey questions are irrelevant and amount to the dissemination of highly prejudicial information. [15] A brief discussion of these factors and their combined effect leads to the inescapable conclusion that this Court must exercise its supervisory powers to insure that both the public's right and defendant's right to a trial before a fair and impartial jury is protected.

It is undisputed that this case has created a great deal of media attention and is properly described as "highly publicized." As the trial date approaches, the lull in publicity experienced during the past few months will likely end. Courts have found that "[t]he potential for injury to the integrity of the judicial process is significant in cases involving trial publicity." *See, e.g.,* *Levine,* 764 F.2d at 597. Consequently, the timing of defendant's request to contact registered voters in the Jacksonville Division is a crucial factor in the Court's analysis.

A survey conducted so close to the trial of this cause could potentially contribute to the inflammation of the publicity this cause has heretofore generated. That is, as the Court has found, several of the proposed questions would in essence serve to disseminate highly prejudicial information with regard to the defendant and the case. This information would be transmitted via the survey to thousands of persons. [16] Publicity immediately before trial "has a greater potential for prejudice than publicity months in advance of trial." *Levine,* 764 F.2d at 598 (citing *United States v. Coast of Maine Lobster Co.,* 538 F.2d 899, 902 (1st Cir.1976); *Chicago Counsel of Lawyers v. Bauer,* 522 F.2d 242 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976)). As this Court observed in its order lifting the earlier temporary restraint, and reiterates with regard to the proposed attitudinal survey, "[the] phrasing of some of the questions .. approaches what could be viewed as the dissemination of information that could poten-

---

**13.** The Court notes that the government will have to conduct voir dire without the aid of a community attitudinal survey. Moreover, defendants without the financial capabilities to pay for polls and surveys conduct voir dire without availing themselves to jury profiles and the like.

**14.** Clearly any information gained by defendant in a community attitudinal survey will benefit his exercise of peremptory challenges, not challenges for cause. In light of the fact that there exists no constitutional guarantee that either a defendant or the government can exercise peremptory challenges, *see Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1724, 90 L.Ed.2d 69 (1986), prohibition against a community attitudinal survey does not impinge on defendant's right to a fair trial.

**15.** As noted above, defendant Lehder submitted a copy of the proposed community attitudinal survey to the Court *in camera* and *ex parte.* While the Court has considered the content of the survey for the purpose of this order, it will not comment upon specific questions but will limit itself to general observations.

**16.** Defendant claims that the probability of any one of the approximately 479,000 registered voters being polled is .00229. In order to reach this figure, defendant had to assume that approximately 1094 persons would have to be contacted to obtain the 200 responses needed to complete the community attitudinal survey. Assuming that every person contacted by the defendant tells one person in his or her immediate household and one person outside the household about the survey, more than 3,000 persons would be tainted by the survey, thereby causing a ripple or churning effect. The fact that this churning effect may have occurred in the venue study merely adds to the caution with which the Court approaches further studies.

tially create publicity by imparting alleged facts of the case to various individuals in the community." *See* Order of August 21, 1987, at p. 830. While the Court was willing to allow defendant to contact potential jurors for the purpose of conducting a venue survey some seven weeks prior to the trial date, the Court is of the view that with less than three weeks before trial and with the venire having been summoned, individual contact with registered voters must cease in order to safeguard the integrity of the judicial process.

The Court, in addition to being concerned about the number of persons that could be exposed to the highly prejudicial information contained in the proposed jury survey, is of the opinion that the possibility, no matter how remote, that even one person who has been summoned on the venire might be contacted by defendant or learn that defendant is contacting registered voters in this community is intolerable. The damage resulting from such contact is two-fold: First, the panel from which the Court selects a jury would be diminished by at least one person because of the defendant's own action;[17] Second, an individual who has been summoned for the venire panel and is subsequently called by a stranger who asks whether he or she or a family member has been called for jury duty might become apprehensive or even intimidated. To effectuate the goal of a fair and impartial trial for the defendant, the government, and the public, it is essential that citizens serve on juries without suspicion and without fear. Action by either a defendant or the government that could jeopardize this objective must be limited by the Court.[18]

The Court is cognizant that highly publicized trials are often surrounded by a "circus-like environment." *See Sheppard v. Maxwell,* 384 U.S. 333, 342–349, 86 S.Ct. 1507, 1511–15, 16 L.Ed.2d 600 (1966). The Court is greatly restricted with regard to restraints it can place on the media and its reporting of the trial and related proceedings. The media has the right to attend virtually all formal hearings, conferences, and of course, trials. The Court can and must, however, exercise its supervisory powers to limit action by the trial participants that could adversely affect the atmosphere surrounding highly publicized cases. In light of the circumstances as they presently exist in this case, the Court must fix limits with regard to the type of information the parties can disseminate and the contact the parties can have with persons who already may have been called for jury duty or who may be called in the future if needed. Failure by the Court to forbid further surveying or polling of registered voters in the Middle District of Florida, Jacksonville Division by defendant would likely result in harm to the fair administration of justice and damage to judicial integrity.

█ Having determined that the government has carried its burden of proving the "serious and imminent threat" element of *Levine,* the Court must evaluate the injunction in terms of scope and precision. Defendant Lehder is prohibited from surveying or polling registered voters who reside in the Middle District of Florida, Jacksonville Division concerning himself and this case. The narrowness of the court's injunction can best be measured by looking at what activities are not restrained. First, defendant is not precluded from conducting polls and surveys in communities other than the Jacksonville Division. Secondly, defendant Lehder is not prohibited from using the information he gathered in his

---

17. As noted above, defendant's pre-voir dire survey suggests that it will be difficult to select a jury. The Court must do all that it can within its power to preserve its ability to select a jury. While there exists constitutional limitations on the action the Court can take to do this, it is clear that "it is appropriate to impose greater restrictions on the free speech rights of trial participants than on the rights of nonparticipants." *Levine,* 764 F.2d at 595 (citations omitted). "[T]he right of courts to conduct their

business in an untrammeled way lies at the foundation of our system of government...." *Wood v. Georgia,* 370 U.S. 375, 383, 82 S.Ct. 1364, 1369, 8 L.Ed.2d 569 (1962).

18. Of course the timing of defendant's proposed community survey affects the degree of harm that could result. Contact prior to the venire being called is much less likely to create fear or apprehension among venirepersons.

pre-voir dire survey to help him prepare for voir dire. The Court has tailored the injunction barring Lehder's surveying and polling in such a way that the only activity proscribed is the contacting of persons who have been summoned for the October 5, 1987 venire *and* those persons who could potentially be called if additional venirepersons are needed.[19]

The Court has further determined that less restrictive means of protecting the fair administration of justice are nonexistent. Other courts have faced similar problems and offer possible alternatives to a restraining order. The United States Supreme Court in *Nebraska Press,* 427 U.S. at 564, 96 S.Ct. at 2805, suggested that asking certain questions during voir dire might be an alternative to a restraining order. It is true that if a member of the venire stated that he or she had been contacted by defendant's agent or had sufficient knowledge of friends or family who had been contacted, such person could possibly be excused for cause. But, the harm discussed above with regard to the Court's attempt to select a jury and the apprehension or fear that the venireperson might experience, would occur when that person or a member of his or her family receives the call from defendant's agent, rendering an after-the-fact remedy insufficient. Thus voir dire is not a suitable alternative.

The Court in *Nebraska Press,* 427 U.S. at 563–64, 96 S.Ct. at 2804–05 also proposed change of venue and postponement of the trial date as alternatives to a restraining orders. This Court rejects these propositions because changing the geographical location of the trial or continuing the trial date simply do not cure the problems the Court has outlined in great detail.[20] The *Levine* court's brief comments with regard to these alternatives are especially instructive: "A change of venue would be appropriate if the publicity surrounding a trial is centered on a specific geographical location. A postponement would be appropriate if the publicity is temporary." *Levine,* 764 F.2d at 600. The present case simply does not present the Court with either of these circumstances. Moreover, resort to either of these remedies would reward defendant Lehder—he has sought both a pre-voir dire change of venue and a continuance of the October 5, 1987 trial date—for creating his own publicity.[21] The Court cannot permit a defendant to gain this kind of control over the judicial process.

Finally, the Court could assume a greater supervisory role in the drafting of survey questions and in the actual polling of registered voters. This alternative is unacceptable. The Court has neither the time nor the personnel to undertake such a task. More importantly, the Court cannot appear to place its imprimatur on methods of strategy or views of any party. The harm to the integrity of the judicial system would be staggering.

Any contact between defendant Lehder's agents and registered voters of the Jacksonville Division on the eve of trial presents a serious and imminent threat to the fair administration of justice. "[V]arious alternatives to a restraining order would be either ineffective or counterproductive." *Levine,* 764 F.2d at 600. Therefore, the Court must enjoin defendant from surveying or polling registered voters who reside in the Jacksonville Division in order to protect the right of the defendant, the public, and the government to a fair trial before an impartial jury.

### D. *Cate* Analysis

The Court's conclusion that defendant must be barred from further contact with

---

19. If the Court is unable to select a jury from the initial venire, it will not hesitate to summon another panel. Therefore, all registered voters in the Jacksonville Division must be viewed as potential jurors.

20. A continuance simply raises the issue of why defendant did not conduct the proposed survey earlier, thus avoiding the need for a continuance now.

21. This case originally was set for trial on March 23, 1987. Defendant has requested five continuances of the trial, four of which have been granted and one of which was filed on the date of this order. Defendant's latest motion for continuance asks for a delay of the trial until January 1988.

registered voters who reside in the Jacksonville Division is bolstered by the application of the four-factor test the Eleventh Circuit has set forth with regard to the issuance of a preliminary injunction in a civil case:

> To be entitled to injunctive relief, the moving party must establish that (1) there is a substantial likelihood that he will prevail on the merits of the claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue.

*Cate v. Oldham,* 707 F.2d 1176, 1185 (11th Cir.1983) (citations omitted). As this Court noted in its previous order concerning defendant's pre-voir dire poll, the issuance of an injunction on this matter amounts to a permanent injunction; therefore, the first prong of the *Cate* test is inapplicable.

The Court is convinced that there is a substantial threat that the government and the public stand will suffer irreparable injury if the defendant is not enjoined. The fact that a venire of 300 has been summoned and the possibility that selecting a jury may be difficult lead to the conclusion that defendant must be forbidden from contacting potential jurors. The harm that could occur if a member of the venire is contacted by one of defendant's agents likewise compels this Court to conclude that failure to issue this injunction will result in irreparable injury. As explained above, change of venue or continuance do not "repair" the harm inflicted by the proposed survey.

■ In applying the third factor of the *Cate* analysis, the Court must weigh the threatened injury against the harm defendant Lehder will suffer if the injunction issues. The injury articulated by the government is a threat to the fair administration of justice. On the other hand, the harm defendant Lehder will suffer consists of a very narrow restraint on his first amendment right to free speech and a deprivation of information that could marginally enhance his ability to exercise peremptory challenges. It is the Court's opinion that the threat to the fair administration of justice clearly outweighs the possible harm defendant Lehder will suffer.

The timing and the purpose of defendant's proposed survey distinguish the present situation from the government's previous attempt to permanently enjoin the activities of defendant herein at issue. The Court found in its August 21, 1987 ruling that to restrain defendant's pre-voir dire survey would infringe upon his first amendment right to free speech and his right to prepare an effective defense at trial. The Court has determined that the nearness of trial and the calling of the venire panel compel suitable limitations on the release of information by trial participants, resulting in a narrow infringement of defendant's first amendment rights.

The purpose of defendant's initial survey was to bolster his argument that he cannot receive a fair trial in this jurisdiction. Clearly, prohibition of that poll may have affected defendant's right to a fair trial. The stated purpose of defendant's community attitudinal survey is "to determine what type of person will, despite the enormous volume of publicity, remain fair and impartial." *See* Defendant's Memorandum of Law in Opposition to Government's Renewed Application for Permanent Injunction Barring Surveys or Polls of Registered Voters in the Middle District of Florida and Motion of Permission to Conduct Jury Profile, at pp. 2–3. The information unavailable to defendant because of this prohibition might be marginally helpful to him in exercising his peremptory challenges. However, defendant will have the traditional, time-tested method of selecting a fair and impartial jury through the voir dire process. Therefore the harm he will suffer is minimal and does not rise to the level of a constitutional violation.[22]

---

**22.** The Court, in its order dissolving the temporary restraining orders, recognized that a properly conducted poll might help defendant meet the high standard of pre-voir dire change of venue motions. The Court perceived that information gathered in a reliable and scientific manner could assist it in determining whether there should be an attempt to select a jury.

Perhaps the strongest case for issuance of the injunction in this cause can be found in the final prong of the *Cate* test—the public interest that will be harmed if the injunction should issue. In any case involving the first amendment, public interest is implicated. That is, the public has a stake in any decision that might curtail free speech. However, the public's first amendment interest in monitoring criminal trials goes to information about the conduct of the judicial process. *See, e.g., Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1983). The interest of any defendant in open pretrial communication is subject to the form of balancing previously described, and must yield to the public interest in the administration of justice when the restraint does not threaten the core of a defendant's rights. In this instance, the Court is not imposing a restriction on media access to any proceedings. Neither is the Court preventing the media from disseminating any information it gathers to the public. The restraint, therefore, will not directly affect what the public knows about the case, but will adversely affect only the aforementioned general interest the public has in the protection of the first amendment.

It is significant to note that failure of this Court to issue the injunction in this cause would in fact result in serious harm to the fair administration of justice and would damage "the legitimate expectation of ... the public that the judicial system will produce fair results." *Levine,* 764 F.2d at 597. The public must be assured that criminal trials will take place in an atmosphere conducive to impartiality and order.

## CONCLUSION

This Court, like all courts, has an obligation to exercise its supervisory powers in such a way as to protect a defendant's right to a fair trial, the government's right to present its case, and the public's right to "expect 'fair trials designed to end in just

judgment.'" *United States v. Tijerina,* 412 F.2d 661, 666 (10th Cir.) (quoting *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949)), *cert. denied,* 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969). In accordance with applicable law, the Court has considered all relevant factors and how these factors affect the competing interests of defendant Lehder, the government, and the public. Based on this evaluation, the Court concludes that in the interest of the fair administration of justice and the integrity of the judicial system, defendant Lehder, his attorneys, and agents, must be enjoined from contacting registered voters who reside in the Middle District of Florida, Jacksonville Division for the purpose of conducting surveys or polls concerning defendant Lehder and any aspect of this case.

Consistent with this Court's opinion, it is

ORDERED AND ADJUDGED:

1. That the Government's Renewed Application for Permanent Injunction Barring Surveys of Polls of Registered Voters is hereby granted as to the Middle District of Florida, Jacksonville Division;

2. That defendant Lehder, his attorneys, and his agents are hereby enjoined from contacting registered voters who reside in the Middle District of Florida, Jacksonville Division for the purpose of conducting a survey or poll regarding defendant Lehder or any aspect of this case;

3. That defendant Lehder's Motion for Permission to Conduct Jury Profile is hereby denied.

---

Therefore, the benefits of the survey served a very broad purpose and went to the heart of defendant's right a fair trial. That situation must be contrasted to the extremely narrow and marginally beneficial purpose of the community attitudinal survey.