Rebecca MITSON, By and Through her next friend, Marilyn JONES, individually, and on behalf of all others similarly situated, et al., Plaintiffs,

v.

Gregory L. COLER, in his official capacity as Secretary of the Department of Health and Rehabilitative Services, and V. Sheffield Kenyon, in his official capacity as Program Staff Director of Economic Services, Department of Health and Rehabilitative Services, Defendants.

Gregory L. COLER, et al., Third Party Plaintiff,

v.

Otis R. BOWEN, as Secretary of the United States Department of Health and Human Services, Third Party Defendant.

No. 87–12020–Civ.

United States District Court, S.D. Florida.

Oct. 5, 1987.

Christine E. Larson, Helen M.E. Stevens, Fort Myers, Fla., Barbara J. Prager, Legal Aid Service of Broward, Ft. Lauderdale, Fla., for plaintiffs.

James A. Peters, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., Theodore Mack, Asst. Gen. Counsel, Dept. of HRS, Tallahassee, Fla., for defendants.

Gary A. Ratner, Asst. Regional Counsel, Dept. of HHS, Atlanta, Ga., Wendy Jacobus, Asst. U.S. Atty., Miami, Fla., for third party defendant Otis R. Bowen.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ARONOVITZ, District Judge.

### I. Nature of the Case

This action concerns nursing home occupants in Florida seeking on behalf of themselves and others similarly situated to enjoin the Florida Department of Health and Rehabilitative Services (HRS)[1] from including as "countable income," in determining their eligibility for Medicaid Institutional Care Payments (ICP) Program benefits, that portion of their Veterans Administration Improved Pensions (VAIP) which is awarded pursuant to 38 U.S.C. Section 503(a)(8) and represents a reimbursement for medical expenses. The plaintiff class and HRS have stipulated that the plaintiff

class consists of approximately 250 members.

The Florida Medicaid ICP, which is the subject of Plaintiffs' Complaint, is a wholly state-administered program designed to provide payment for medical care and services rendered to persons who would otherwise be unable to obtain such care and services because of their income. The ICP provides payment to nursing homes on behalf of individuals who are found to be aged, blind, or disabled. The program is jointly funded by state general revenue (43.83%) and federal matching funds (56.16%). In order to be eligible for federal matching funds, a state must follow policy established by the Health Care Financing Administration (HCFA) which governs the Medicaid and Medicare Programs (42 C.F.R.) and the Social Security Administration which governs the Federal Supplemental Security Income Program (SSI) (20 C.F.R.), including SSI's definition of income. Florida's Medicaid program is not otherwise controlled or regulated by the federal government except to the extent that the state receives federal funds.

The Plaintiff class consists of all persons who have been, or will be, denied benefits under the Florida Medicaid Institutional Care Payment Program due to the fact that the state Defendants include income received due to unreimbursed medical expenses under the Veterans Administration Improved Pension Program for the purpose of determining Medicaid ICP eligibility. By this action, Plaintiffs seek a preliminary injunction requiring the Defendants to immediately reinstate their Medicaid ICP benefits and/or refrain from denying Medicaid ICP benefits due to the inclusion of VAIP reimbursed medical expenses as income for determining eligibility. The identity and status of the named Plaintiffs and other specific members of the Plaintiff class are not generally in dispute. The circumstances of these Plaintiffs are evidenced by the affidavits of John Bryan, Gary Carroll,

---

1. Plaintiffs have sued Gregory L. Coler, in his official capacity as Secretary of the Department of Health and Rehabilitative Services and V. Sheffield Kenyon, in his official capacity as Program Staff Director of Economic Services, Department of Health and Rehabilitative Services. These Defendants are sometimes referred to within this Opinion collectively as "the state defendants" and are sometimes referred to simply as "HRS" or "the state."

May A. Genelay, Aaron Hammond, General P. Kirkland, Rebecca Mitson, Daniel Ramsdell, Louis Ravina, Elizabeth Rubino, Rhoda Ruggiero, Grace Stevens, John Stunson and Margaret Lee Whaley.

Following the entry of an Order on September 14, 1987 certifying this action as a class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs moved for the entry of an order for preliminary relief against HRS, the state defendant only.

Oral argument on Plaintiffs' Motion was scheduled and entertained by the Court. The Court has reviewed the pleadings, memoranda and affidavits on file and has fully considered the arguments of counsel. All parties were invited to present testimony and other evidence at the hearing on Plaintiffs' Motion, but all parties declined to do so, except for the introduction of certain affidavits, referred to herein, by the Plaintiff. Based on the foregoing and for the following reasons, the Court finds that a preliminary injunction should issue prohibiting HRS from determining eligibility for Medicaid ICP benefits inconsistent with this Opinion.

## II. Jurisdiction

The Court's jurisdiction over this matter is predicated upon 42 U.S.C. Section 1983. Plaintiffs' Complaint also alleges jurisdiction pursuant to 42 U.S.C. Section 1396, *et. seq.*

## III. Introduction to Relevant Issues

Plaintiffs are eligible to receive pensions from the Veterans Administration (VA) under either 38 U.S.C. § 521, which provides pension benefits for veterans with non-service connected disabilities, or 38 U.S.C. § 541, which provides benefits for the surviving spouses of veterans with service-connected disabilities. The VA benefits for which Plaintiffs are eligible are means-tested; their pensions are subject to being reduced by the amount they receive in income

from non-VA sources. 38 U.S.C. § 521(a) and 541(a). Generally speaking, each Plaintiff has *less than* $1,020 per month in non-VA income.

Each Plaintiff requires nursing home care and, accordingly, each Plaintiff incurs substantial unreimbursed medical expenses. As judged by the numerous affidavits submitted by Plaintiffs, these expenses are *at least* $1,020 per month.[2] Because Plaintiffs require nursing home care, they are in need of regular aid and attendance in accordance with 38 U.S.C. § 502(b), and are eligible for pension at a special "aid and attendance" rate, which is 60% above the otherwise applicable pension rate. 38 U.S.C. §§ 521(d) and 541(d). For most veteran-pensioners this rate is presently $9,539 per year, $3,576 of which is for aid and attendance.[3] Applicants and recipients of ICP benefits *must* apply for all other benefits to which they may be entitled, including but not limited to, "aid and attendance." 20 C.F.R. 416.210 and 42 C.F.R. 435.603.

In determining their incomes *for VA pension purposes*, Plaintiffs are permitted to exclude from their non-VA income substantially all of their unreimbursed medical expenses (UME). 38 U.S.C. § 503(a)(8). Because of the way in which the UME provision figures into the calculation of the pension, each Plaintiff is eligible to receive the full amount of VA pension at the appropriate aid and attendance rate.

Plaintiffs would be eligible for Florida's Medicaid program for nursing home patients but for the fact that their VA income places them in excess of the financial level set by the state for determining eligibility. Accordingly, they either have been or will be denied Medicaid because their total income for Medicaid purposes exceeds *Florida's* limit of $10,572 annually ($881 monthly).[4] Applicable federal law would permit

---

2. In fact, on the basis of affidavits submitted with respect to the three named class representatives, the Plaintiffs incur monthly medical expenses well in excess of $2,000 per month.

3. For simplicity, reference is made to rates for veteran pensioners who did not serve in World

War I. The benefits for World War I veterans are somewhat higher, and those for surviving spouses somewhat lower.

4. Each veteran-Plaintiff has an annual income from *all* sources of at least $14,148—$10,572 in Medicaid-counted income plus the amount of

Florida, if it wished, to raise this limit to $12,240 ($1,020 monthly). See Medicare and Medicaid Patient and Program Protection Act of 1987 H.R. No. 1444 (CCH) No. 530 (passed by Congress on July 30, 1987 and signed into law by President Reagan on August 19, 1987).[5]

The state defendants claim that they are obligated to define income pursuant to HCFA and SSI rules and regulations and that the unreimbursed medical expenses paid by the VA are pension payments available for meeting basic needs and are, therefore, properly includable for purposes of determining income under 20 C.F.R. 416.-1102. Plaintiffs argue that the pension payments, although technically called "pensions," are in reality "assistance provided under a federal program whose purpose is to provide medical care or medical services" and are, therefore, properly excludable for purposes of determining income under 20 C.F.R. 416.1103(a)(3). HRS defends its procedures for determining income by arguing that its hands are tied—that it must follow federal policy for purposes of defining income.

At oral argument, the state defendants conceded that they do not object to Plaintiffs receiving the relief requested. The state is, however, concerned with protecting its relationship with the Secretary of Health and Human Services, including the continued receipt of matching funds from HHS. The state has, therefore, nominally objected to Plaintiffs' Motion for Preliminary Injunction and has deferred entirely to the Secretary's interpretation of its own regulations. The state has, further, filed a Third Party Complaint against the Secretary for Health and Human Services for declaratory and injunctive relief to determine, inter alia, whether HHS could penalize HRS if HRS were to determine income differently than HHS policy permits. The substance of the Third Party Complaint, for purposes of determining preliminary relief, is not presently before the Court.

However, the Secretary of HHS was invited to, and did, participate fully at the hearing on Plaintiffs' Motion for Preliminary Injunction, and submitted various memoranda of law in conjunction therewith, since construction of its regulations was at issue.

*IV. Motion for Preliminary Injunction*

The standards for a party seeking preliminary relief were set forth in *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983) as follows. A plaintiff meets its burden of showing the necessity for preliminary relief where: (1) there is a substantial likelihood that he ultimately will prevail on the merits of the claim; (2) he will suffer irreparable injury unless injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue.

Of these four factors, HRS and the Secretary focused their arguments exclusively on the issue of whether Plaintiffs had met their burden of demonstrating a substantial likelihood that they will prevail on the merits. There was no evidence presented to rebut Plaintiffs' arguments and evidence that the class affected will be significantly harmed if the relief requested were denied including, in some instances, the deprivation of essential medical care.

Plaintiffs argue that because the UME provision of their VA benefits received pursuant to 38 U.S.C. § 503(a)(8) helps the Plaintiffs meet their costs of medical care, the UME provision must be deemed "a program whose purpose is to provide medical care" within the meaning of the Secretary's regulation, 20 C.F.R. § 416.-1103(a)(3). The Secretary, on the other hand, construes the purpose of these VA benefits quite differently, denying that the UME provision is such a "program." The Secretary argues that the UME provision is better characterized as an adjustment to

the uncounted aid and attendance allowance, $3,576.

**5.** The state defendant has apprised the Court that a request has been made to the Governor's Office for approval of funds to raise Florida's limit; however, to date, no definitive change in Florida's limit has been effected. Nothing contained in this Order, however, is meant to inhibit that process.

non-VA income for VA pension computation purposes, intended by Congress to assure equity between differently situated VA pensioners, but devoid of any implication for the Medicaid program. The Secretary further argues that Plaintiffs' proposed interpretation of the Medicaid regulation contradicts, while the Secretary's own interpretation supports, clear Congressional policy direction addressing the relationship between the Medicaid program, on the one hand, and various government cash assistance programs, including the VA pension program, on the other. The Secretary states that the federal Medicaid program was intended as a measure of last resort.

Although the principle has been formulated in various ways, this Circuit recognizes that the Secretary's interpretation of his own rules is entitled to a significant measure of judicial deference. *Scott v. Bowen*, 808 F.2d 1428 (11th Cir.1987); *Parker v. Bowen*, 788 F.2d 1512 (11th Cir. 1986). Normally, the Secretary's interpretation of its regulations must be sustained unless the interpretation is unreasonable or clearly erroneous. In this case, however, the Secretary seeks not only deference to its interpretation of its *own* regulation, 20 C.F.R. 416.1103(a)(3), but seeks deference to its interpretation of the purposes behind the *Veterans Administration's* rules and regulations for determining benefits.

### a. *Statutory Analysis*

Based upon an analysis of the Veterans' and Survivors' Pension Improvement Act of 1978 (VSPIA), the regulatory framework of the Medicaid and SSI programs, and the case law discussed herein, the Court finds that there is a substantial likelihood that Plaintiffs will prevail on the merits of their claim that amounts paid to them pursuant to 38 U.S.C. § 503(a)(8) are (1) intended as a reimbursement for medical expenses and (2) as such, should not be counted as "income" for purposes of determining Medicaid eligibility.

The Veterans Administration Improved Pension (VAIP) program was created by the passage of the Veterans' and Survivors' Pension Improvement Act of 1978 to provide veterans and their dependents with a minimum monthly income to meet their daily needs. Pub.L. No. 95–588, 92 Stat. 2497 (codified at 38 U.S.C. §§ 501–08 and 38 U.S.C. §§ 521–23). Congress recognized that veterans who are more severely disabled have greater needs and established increasing guaranteed benefit levels for those who are (1) disabled; (2) disabled and housebound; and (3) disabled and in need of aid and attendance.

Unlike its predecessor, the VAIP was designed as a "one-variable" pension plan. In computing a VAIP benefit, an applicant's income from all other sources ("countable income") is subtracted from the applicable guaranteed benefit level, and the resulting difference, if any, is the amount of his VAIP award. 38 U.S.C. § 521 (1979).

In general, all non-VA income regardless of its source is deducted from the guaranteed benefit level in arriving at an applicant's VAIP award. An important exception to this principle is found at § 503(a)(8) which provides for a deduction for:

amounts equal to amounts paid by a veteran, veteran's spouse, or surviving spouse or by or on behalf of a veteran's child for *unreimbursed medical expenses*, to the extent that such amounts exceed 5 per centum of the maximum annual rate of pension ... (Emphasis added).

█ It is this subsection which Plaintiffs contend should be regarded as a medical expense reimbursement provision. The Secretary, on the other hand, contends that Congress intended § 503(a)(8) as merely an adjustment to income provision. It is clear from a review of the legislative history that in preserving this provision from the prior law, Congress intended to provide special treatment for pass-through type receipts such as reimbursements for medical expenses. As set forth in the legislative history of the VSPIA:

Generally, with limited exceptions, no distinction is made as to the source of non-pension income and all such available income will be calculated in determining the amount of pension the veteran will

receive under the needs-based program. Thus, in order to align pension payments more closely to a pensioner's available resources, and, hence, to actual need, the vast majority of the 18 income exclusions contained in the current pension law are eliminated. Certain exclusions with respect to unusual situations which do not conflict with the basic principles of the pension program are continued. *For the most part, these exclusions were recommended by the Veterans Administration in draft proposals previously submitted to the Committee. They were directed toward those funds expended which are in the nature of one-time or pass-through type receipts, for example, unusual unreimbursed medical expenses and fire insurance proceeds.* (Emphasis added).

H.Rep. No. 1225, 95th Cong., 2d Sess. 28, reprinted in 1978 U.S.Code Cong. and Ad. News 5583, 5609.

The Secretary argues, on the other hand, that the UME provision has been characterized by the VA itself as merely an adjustment to income for purposes of computing VA Pensions, citing for example, H.Rep. 95–1225 at 6, U.S.Code Cong. and Ad.News at 5586; H.Rep. 95–1225 at 11, U.S.Code Cong. and Ad.News at 5591. The Secretary further states that the objective of the UME provision was plainly stated in the 1971 House Report, which provides that "[i]n determining a pensioner's income for pension purposes, exclude from the counting of income amounts paid by the claimant for unusual medical expenses." H.Rep. 92–656, 92d Cong., 1st Sess. (1971), reprinted in 1971 U.S.Code Cong. and Ad.News 2180, 2182. The authority provided by the Secretary does not, however, reveal the *underlying purpose* of excluding unreimbursed medical expenses before computing pension benefits, which is the critical inquiry herein. The cited authority merely states that the VA *in fact* excludes unreimbursed medical expenses for purposes of determining income—a fact not disputed herein.

An examination of how the UME provision actually operates demonstrate the intent behind excluding unreimbursed medical expenses from income. For instance, prior to using their non-VA income to pay for their medical expenses, each of the Plaintiffs received $0 in VA pension benefits. However, once they became obligated to use their non-VA income to pay for their medical care, their VAIP awards were increased to reimburse them for using their non-VA income to pay for their medical expenses. In each instance, the Plaintiff would receive *no* VA pension at all but for the fact that they incur unusual medical expenses. Further, each plaintiff must *first* incur the medical expense and pay the same from non-VA sources before becoming eligible for *any* VA payments whatever.[6]

In fact, the pension recipient only serves as a conduit for the increased pension amount. He receives this increase in VAIP as long as he is incurring medical expenses equal to or greater than the increase. If, miraculously, a recipient recovers to the extent that he no longer requires nursing home care, he would no longer be eligible to receive the § 503(a)(8) reimbursement. In reality, the income that he has available to meet his basic needs never varies.

---

**6.** A review of the table below demonstrates further how this reimbursement provision works.

(Using maximum pension for surviving spouse $6,392)

| NAME OF BENEFICIARY: | MITSON | RUBINO | GENELAY |
|---|---|---|---|
| VA pension w/o UME adjustment | 0 | 0 | 0 |
| Amount of UME | 28,470 | 13,611 | 13,216 |
| VA pension with UME adjustment | 6,392 | 6,392 | 6,392 |
| Net Increase in VA Pension Due to UME | 6,392 | 6,392 | 6,392 |

Based upon the foregoing, it is apparent that the intent as well as the effect of § 503(a)(8) is to provide an applicant who uses his non-VA income for medical expenses with a reimbursement in the form of an increased VAIP award. Having determined that amounts received by Plaintiffs pursuant to § 503(a)(8) are properly characterized as medical expense reimbursements, the Court must now determine whether such reimbursements are income under the applicable SSI regulations.

The Secretary's regulations provide that income that would be disregarded in determining eligibility for SSI must be disregarded when determining Medicaid eligibility. 42 C.F.R. 435.722(b). In *Summy v. Schweiker*, 688 F.2d 1233 (9th Cir.1982), the Ninth Circuit addressed the issue of whether a § 503(a)(8) reimbursement for medical expenses received from the Veterans Administration was income for purposes of the SSI program. In that case, the court held that third party payments for medical care or services are excludable from "income" pursuant to 20 C.F.R. 416.-1109(a) [now, 20 C.F.R. 416.1103(a)] in determining eligibility for SSI.

The arguments advanced by the Secretary in the instant case are identical to those asserted by the Secretary in *Summy*. The Court is not persuaded by these arguments nor by the Secretary's claim that *Summy* was erroneously decided.

First, as asserted by the Secretary, the Court agrees with the principle that a court should accord substantial weight to the interpretation given a statute or regulation by the agency charged with administering it unless it is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). However, this principle has limited application in the instant case. The Secretary's determination that amounts included in VAIP awards as reimbursements for medical expenses are "income" under Social Security regulations turns almost completely on his interpretation of Veterans Administration laws and regulations. To the extent that the Secretary's construction rests on the interpretation of another agency's statutes and regulations, it is not entitled to special deference. *Tsosie v. Califano*, 651 F.2d 719 (10th Cir.1981).

Although not a medical expense reimbursement case, the facts and holding of *Tsosie* are analogous to the Plaintiffs' case. In *Tsosie*, the issue before the Court was whether the portion of a VA pension which a veteran's widow received on account of her children could be counted as income for determining her eligibility for SSI benefits. The Secretary asserted that the entire pension should be counted as income because it was money "actually available" to Tsosie. Tsosie claimed that to attribute the portion of VA pension paid to her because of her children violated both the letter and the spirit of the Veterans' Benefits Act. In rejecting the Secretary's assertion that his interpretation of the definition of "income" under the Social Security Act be given deference, the Court stated:

> We find the Secretary's interpretation unduly legalistic and technical. It relies on the literal meaning of isolated phrases. Little weight is given to the purpose and spirit of the voluminous rules from which the phrases have been lifted. The Secretary is like one who listens to music for individual notes rather than for the melody: he misses the theme.

651 F.2d at 722. Just as a portion of Tsosie's pension was intended for the benefit of her children, a portion of the Plaintiffs' pension is intended to be used to pay for medical care and services. Any other finding by the Court would violate both the letter and spirit of the VSPIA.

The case of *Peffers v. Bowman*, 599 F.Supp. 353 (D.Idaho 1984) involved the same class of plaintiffs as the case before this Court. In that case, the court determined that the portion of a VAIP award representing reimbursement for medical expenses should not be counted as income for the purpose of determining Medicaid eligibility. The basis for the court's holding was that these amounts are not income because they are excludable pursuant to 20 C.F.R. 416.1103(a).

In *Peffers*, the Secretary conceded the holding in Summy that these reimbursed

medical expense payments were "not income" for purposes of SSI eligibility, but argued that *Summy* was inapplicable to the facts presented in Peffers because the *Summy* decision turned upon prior definition of what is "not income" under Social Security regulations.[7] The court acknowledged that the regulation had been changed, but determined that the changes were not intended to make the new regulations more restrictive based upon the statement of the Secretary contained in the preamble to the revised regulations.

As in *Peffers,* this Court finds that the reimbursements for medical expenses are excludable from income pursuant to 20 C.F.R. 416.1103(a). It is clear from our analysis of the VSPIA that these amounts should be excluded from income under 20 C.F.R. 416.1103(a)(3) as "assistance provided ... under a Federal, State, or local government program, whose purpose is to provide medical care or services" just as they would have been excludable under 20 C.F.R. 416.1109(a) as "third party payment for medical care or medical services." The Secretary's interpretation to the contrary is clearly erroneous in that it ignores the obvious purpose of the UME provision and attempts to evade the clear language of its own statute to determine the actual purpose of the governmental assistance payments it seeks to exclude.

**b.** *Under Color of State Law*

The state defendants have, rather belatedly, raised the issue of whether the state's conduct complained of herein can be properly characterized as "under color of state law" so as to state a claim under Section 1983. Generally speaking, the Supreme Court has recognized that Section 1983 is available to enforce violations of federal statutes by state actors. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

The state has directed the Court's attention to a recent Eleventh Circuit Court of Appeals decision in which that Court concluded:

Where the challenged action by state employees is *nothing more than* application of federal rules, the federal involvement in those actions is *so pervasive* that the actions are taken under color of federal and not state law.

*Rosas v. Brock,* 826 F.2d 1004 (11th Cir. 1987, *citing Martin v. Heckler,* 773 F.2d 1145, 1154 (11th Cir.1985) (en banc); *Askew v. Bloemker,* 548 F.2d 673, 677–78 (7th Cir.1976) (emphasis added).

In *Rosas,* a state defendant administered the Disaster Relief Act of 1974, 42 U.S.C. § 5121, *et seq.* on behalf of the federal government pursuant to a cooperative

---

**7.** The Social Security regulation in effect at the time of the *Summy* decision was 20 C.F.R. § 416.1109 and read as follows:

Medical services. The term "income" does not include the value of any third-party payment for medical care of medical services furnished to a beneficiary. This exclusion from income also applies to room and board furnished during medical confinement and paid for by such third party.

In 1981, the Secretary promulgated new regulations defining what was "not income" for purposes of SSI eligibility. The new regulations, codified at 20 C.F.R. § 416.1103, provided:

Some things you receive are not income because you cannot use them as food, clothing, or shelter, or use them to obtain food, clothing or shelter. In addition, what you receive from the sale or exchange of your own property is not income; it remains a resource. The following are some items that are not income:

(a) Medical care and services. Medical care and services are not income if they are any of the following:

(1) given to you free of charge or paid for directly to the provider by someone else;

(2) Room and board you receive during a medical confinement;

(3) Assistance provided in cash or in kind (including food, clothing or shelter) under a Federal State, or local government program, whose purpose is to provide medical care or services (including vocational rehabilitation);

(4) In-kind assistance (except food, clothing, or shelter) provided under a nongovernmental program whose purpose is to provide medical care or medical services;

(5) Cash provided by any nongovernmental medical care or medical services program or under a health insurance policy (except cash to cover food, clothing or shelter) if the cash is either:

(i) Repayment for program-approved services you have already paid for; or

(ii) A payment restricted to the future purchase of a program-approved service.

agreement between the state and federal governments. The state agency denied plaintiff's claim for benefits on the basis of a federal rule defining who is an "unemployed worker" under the Act. The Eleventh Circuit rejected the plaintiff's argument that a decision to participate in a federal disaster relief program necessarily involves state action. While conceding that federal oversight of a state-administered federal program will not automatically preclude a finding that a state employee acted under color of state law (citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) and *Martin v. Heckler, supra* ), the Court focused instead on whether the federal involvement was "so pervasive" that it cannot be said that the actions were taken under color of state law.

The facts of *Rosas* are easily distinguishable from the case at bar. Initially, in *Rosas,* funding for the disputed benefits was provided solely from the federal government. The state had the option of participating in the federal program in its entirety, contingent upon following federal rules and regulations, or not. In contrast, the Medicaid program under which Plaintiffs seek compensation is a state-provided, state-administered and state-funded program. *See also Ellis v. Blum,* 643 F.2d 68, 83 n. 17 (2d Cir.1981) (state employees who issued pretermination notices to Social Security disability recipients in accordance with federal procedures prescribed by the Secretary held to be acting "under color of federal law" where funding was *entirely* of federal origin and the state agencies functioned *solely* as the Secretary's agents). The only federal involvement in the state Medicaid program is triggered by the state's request to receive matching funds.

The matching funds, as previously stated, are contingent upon the state following certain specified rules and regulations, the interpretation of which constitute the heart of this dispute. However, the federal government has reiterated before this Court that its regulations do not require the state to cap permissible income for Medicaid purposes at $881 per month—that is the *state*'s decision.

Additionally, the state's matching federal funds would in no way be jeopardized if the state were to adopt a "spend-down program" for nursing home services. In a "spend-down program," individuals whose excess income might disqualify them from Medicaid, would be permitted to reduce their income by the amount of (in this case) their unreimbursed medical expenses so that they may reach the lower, qualifying level. The federal Medicaid Act specifically leaves this option entirely open to the states. 42 U.S.C. § 1396a(a)(10); 42 C.F.R. 435.301. Florida has elected not to offer its citizens a spend-down program for nursing home services.

Finally, the state has consistently argued that it is free from responsibility for the way in which it currently computes income. The state has offered evidence which shows that it made inquiry of the Secretary's office for a policy decision in light of the Ninth Circuit's decision in *Summy,* discussed *supra.* The state did not proceed to implement new procedures apparently required by case law, but sought direction instead from the Secretary. The issue of the Secretary's control over the state defendants, as framed by the state's Third Party Complaint, must await another day. However, under the facts presented herein, the state cannot be characterized as a purely passive actor so as to preclude Section 1983 liability.

## V. Conclusion

In summary, based on the foregoing, the Court finds that there is a substantial likelihood that Plaintiffs will succeed on the merits in that they will be able to demonstrate that:

1. Amounts received by the Plaintiffs and the class they represent from the VA pursuant to § 503(a)(8) constitute reimbursements for using their non-VA income to pay medical expenses.

2. These medical reimbursement amounts should not be counted as income for purposes of determining eligibility for Medicaid, in that (a) they do not constitute

"income" within the meaning of 20 C.F.R. 416.1102 since these amounts are intended to be used to pay for medical expenses and they are in no meaningful way available to the Plaintiffs to meet their basic needs; or (b) they are excludable from "income" pursuant to 20 C.F.R. 416.1103(a) as assistance provided under a Federal program, whose purpose is to provide medical care or services.

The Court further finds that the Plaintiff class will suffer irreparable injury unless an injunction issues in that many of the class members will otherwise be deprived of essential medical care either in whole or in part. Additionally, the Court finds that the threatened injury, in human terms, outweighs whatever damage, in financial terms, the injunction may cause the state. Finally, the public interest will not only *not* be harmed by the issuance of this injunction, but will be substantially benefitted in that seriously ill, aged veterans will receive essential medical care that could not otherwise be provided.

Accordingly, based on the foregoing, it is

ORDERED AND ADJUDGED as follows:

1. The state defendants are preliminarily enjoined from including VAIP reimbursed medical expenses as income for purposes of determining ICP eligibility.

2. The state defendants shall reinstate the named class representatives' ICP benefits.

3. The Court has been impressed with arguments of all counsel that there is a need for this matter to proceed on an accelerated basis. A final evidentiary hearing is, therefore, hereby scheduled in this matter for Tuesday, November 17, 1987 at 9:00 A.M. in Courtroom X of the United States District Courthouse, 301 North Miami Avenue, Miami, Florida (one full day has been set aside for purposes of this hearing).

DONE AND ORDERED at Henderson County, North Carolina, this 5th day of October, 1987. A duplicate copy of this Order will be executed and filed with the Clerk's Office for the Southern District of Florida in Miami, Florida, on or before October 15, 1987.